BOSTON ELECTRIC LIGHT COMPANY *vs.* BOSTON TERMINAL COMPANY.

Suffolk.    November 20, 1903. — January 6, 1904.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & BRALEY, JJ.

*Electric Light Company.    Constitutional Law.*

An electric light company, using the streets of Boston for the support of its poles and wires under a license revocable by the public authorities, and required by St. 1894, c. 454, to put its wires underground under a like revocable license, holds such privileges in the streets subject to revocation by the Legislature.

St. 1896, c. 516, providing for a south terminal station in Boston, does not violate the obligation of contracts in authorizing the taking of portions of certain streets containing conduits of the Boston Electric Light Company, incorporated under the general laws contained in Pub. Sts. c. 106.

TORT for taking conduits, wires and cables of the plaintiff under St. 1896, c. 516, alleged to be unconstitutional. Writ dated October 18, 1901.

In the Superior Court the case was tried before *Mason*, C. J., without a jury. He found for the defendant; and the plaintiff alleged exceptions.

*E. W. Burdett & C. A. Snow,* for the plaintiff.

*S. Hoar & W. Hudson,* for the defendant.

KNOWLTON, C. J.    This is an action of tort to recover the value of conduits laid by the plaintiff in portions of two public streets in Boston, which were discontinued by St. 1896, c. 516, and taken by the defendant for a part of the site of the terminal station erected under the authority of this statute. The plaintiff brought a petition for damages for the taking of these conduits, which was before this court, and is reported in 182 Mass. 397. In that case it was decided that no part of the petitioner's property was taken, and after a consideration of the uses to

which public streets may be put in this Commonwealth, and the rights of parties using them, under our general laws, the opinion proceeds as follows: " All the statutes and ordinances upon which the petitioners rely as a justification for their action in constructing conduits in the public streets and as giving them rights of property there, are merely provisions for the regulation of the different public rights in the streets. None of them purports to convey private rights of property. Most of them expressly state the limitations upon the authority given, and make the petitioners subject to possible future proceedings terminating or modifying their rights." The statutes and ordinances relied on were then cited. The plaintiff now attacks the constitutionality of the St. 1896, c. 516, and seeks to bring this action within that class of cases in which a statute has been held to confer upon a corporation a franchise, which includes a private right of property in streets and public places, that is protected by the constitution of the United States under the contract created by action of the corporation under the statute.

In view of the plaintiff's contention, it may be well to consider more particularly the authority under which these conduits were laid. The plaintiff was incorporated under the general laws contained in the Pub. Sts. c. 106, for the purpose of conducting the business of manufacturing, generating, transmitting and supplying electricity to be used in lighting in the city of Boston. This statute authorizes the organization of corporations for carrying on business of many different kinds, but it contains no special mention of business of this kind, and does not purport to give any authority to use the public streets. Most of the poles formerly used by the plaintiff on the streets referred to were erected by its predecessors in title, those in Kneeland Street by the Brush Electric Lighting Company, and those in Federal Street by the American Union Telegraph Company, which corporations, as we infer from the bill of exceptions, were organized under the same statute as the plaintiff. In reference to the erection of poles by each of these corporations, the mayor and aldermen of Boston passed an order giving permission to erect the poles in the streets upon numerous stated conditions, one of which was that the company " shall remove

said poles when so directed by said board " (of aldermen). Another was as follows: " Also on condition that if any of the above conditions are not complied with, the board of aldermen may remove said poles at the expense of said company." Ordinances were passed from time to time in regard to regulation and control of rights in the public streets, none of which purported to give to the plaintiff or to any similar company any rights which were not subject to control or termination at any time by the board of aldermen or the city council. The Revised Ordinance of 1885, c. 28, as amended by the ordinance of March 24, 1886, contains provisions as follows : " Telegraph, telephone, and electric light companies, whether chartered by this or any other State, may lay wires under the streets of the city, under the following regulations, and not otherwise. . . . Second, that said company shall remove its conduits whenever directed so to do by the city council." It is, therefore, too plain for discussion that at the time of the passage of St. 1894, c. 454, the plaintiff was using the streets of Boston for the support of its poles and wires under a license revocable at any time by the public authorities.

This statute provided for a gradual removal, under the direction of an officer called a commissioner of wires, of all the wires and electrical appliances, with certain exceptions, in the public streets of a specified portion of the city of Boston which included Federal Street and Kneeland Street. It applied to all owners or users of wires, cables and conductors within this specified portion, and included in terms every " person, firm or corporation operating or intending to operate wires, cables or conductors in said section of said city." It gave to those then operating such wires the option to remove them without placing them elsewhere, or to put them underground in conduits to be constructed under regulations. It was made the duty of the superintendent of streets " to issue, subject to the usual conditions, all permits for opening and occupying the streets of said city, necessary to carry out the intent of this act, upon application of said commissioner." The usual conditions of permits were prescribed by the ordinances then in force. Ordinances bearing upon this subject are the Revised Ordinances of 1892, c. 3, § 21 ; c. 36, §§ 8, 14, 16, and the ordinance of 1885, c. 28,

as amended by the ordinance of March 24, 1886. The Revised Regulations of the board of aldermen of 1892, c. 5, § 1, leave the issuing of permits subject to existing ordinances, as to terms, specifications and conditions, and do not change the conditions affecting this case. Section 14 of c. 36 of the ordinances of 1892 deals particularly with permits to open and occupy portions of the streets for the purpose of laying, maintaining and using " wires, pipes, or conduits under the surface thereof," and prescribes as one of the conditions that the person applying for the permit " shall remove the conduits and wires whenever directed . . . so to do by the city council." Other ordinances then existing also provided that such conduits might be laid only upon condition that they should be removed at any time when directed by the city council.

The petitioner laid its conduits under a permit containing this condition. It now contends that it acquired a right of property in the street, such that the street could not be discontinued and appropriated to another public use without giving it compensation.

Under the charter of the city of Boston, the control and management of the rights of the public in the streets and highways were vested in the mayor and aldermen and the city council. It has been the policy of these bodies to retain this control, and not to permit the acquisition of private rights in the public easement by individuals or corporations. Under our system of laws, the fee remains in the original owner or his successors in title, and the land may be used by him in any way that is not inconsistent with the rights of the public under the easement acquired by them when the street was laid out. Upon a discontinuance, the easement is terminated and the entire estate reverts to the owner of the fee. It seems pretty plain that by the St. 1894, c. 454, the Legislature did not intend to create private rights which should interfere with the power of the public authorities at any time to discontinue a street, or with the right of the owner of the fee, on the termination of the easement, to have his property unincumbered by any subsequently created interest. It cannot be supposed that every " person, firm or corporation " who elected to put wires underground rather than to remove them, was given a franchise which

included an individual right of property in the public easement that previously had been taken from the landowner. Rather the meaning of the statute seems to be, that persons, firms and corporations who were then using streets for the maintenance of poles or wires under a revocable license, should remove them, and should be permitted, if they chose, to put them underground under a like revocable license. For years the ordinances had allowed conduits to be put underground only by virtue of such a revocable license, and the St. 1894, c. 454, only authorized this under permits containing the usual conditions.

This construction of the statute is in accordance with the general policy of our law in regard to this easement of the public. The locations of our street railways in public streets are subject to revocation. R. L. c. 112, § 32. The construction of gas mains in a highway or street gives no right excepting a right to use the highway or street while it is a highway or street, and does not prevent the public authorities from altering or discontinuing it without a liability in damages. R. L. c. 121, § 17. *Natick Gas Light Co.* v. *Natick*, 175 Mass. 246, 252. Under the statute just cited the erection and maintenance of gas pipes or poles and wires for lighting by electricity are subject to the direction and control of the mayor and aldermen, or the selectmen. Though private corporations have sometimes been granted franchises by special acts of the Legislature, which give them permanent rights of property in public streets, the provisions of these laws are not applicable to the plaintiff in this action.

The contention that the right of revocation reserved by the ordinances and the permit to the city council cannot be exercised by the Legislature is without foundation. The Legislature is the supreme authority in regard to public rights in the streets and highways. This reservation of a right of revocation was a limitation of the plaintiff's right to continue its peculiar use of the street as one of the public by the maintenance of a conduit, and it was a part of the regulation of the rights of all the public. The reservation to the city council was to that body as a representative of the public, and not to it in a narrow or individual sense. The Legislature could at any time supersede the city council in the exercise of its powers, and could do any-

thing that ought to be done in regard to this public easement. The important fact is that the plaintiff had been given no right which was not subject to the control of this easement by the proper authorities. See *Richmond* v. *Southern Bell Telephone & Telegraph Co.* 85 Fed. Rep. 19; *Southern Bell Telephone & Telegraph Co.* v. *Richmond,* 103 Fed. Rep. 31, 34.

The cases cited by the plaintiff in regard to legislative franchises which include rights of property in public places are not applicable to this case.

*Exceptions overruled.*