[No. 9058. Department One. March 23, 1911.]

THE STATE OF WASHINGTON, *on the Relation of A. G. Linhoff, Respondent,* v. SEATTLE, RENTON & SOUTHERN RAILWAY COMPANY, *Appellant.*[1]

STREET RAILWAYS—TRANSFERS—DIVISION OF FARES—FRANCHISES —"LOCAL ROUTE"—"SUM OF RUNS"—CONSTRUCTION. Under a street car franchise providing for an exchange of transfers with other companies on a "basis of settlement that the transfers shall be redeemed at or for such proportionate part of the fare paid as the run or local route of the car on which transfer is received bears to the sum of the runs of the local route of the cars from which the transfer is issued and on which the transfer is received," the entire distance that a passenger may travel upon each system of railway constitutes a unit, equal in quantity and value, in the basis of settlement; and where only two systems were involved in an exchange, the sum of the runs is two, and settlement must be made by one-half of the fare to each company; the words "local route" meaning the entire distance a passenger may travel upon one system, regardless of the fact that different cars may be used; and "the sum of the runs" evidently being intended to cover the contingency of there being in the future more than two street car systems in the city exchanging transfers (GOSE and MOUNT, JJ., dissenting).

Appeal from a judgment of the superior court for King county, Gay, J., entered March 2, 1910, upon findings in favor of the plaintiff, in an action for a writ of mandate to compel the issuance and receipt of transfers by street railway systems. Affirmed.

*Will H. Thompson* and *Morris B. Sachs,* for appellant.

*Scott Calhoun* and *H. D. Hughes,* for respondent.

[1]Reported in 114 Pac. 431.

PARKER, J.—This is a mandamus proceeding commenced in the superior court for King county, wherein the relator prayed for relief substantially as it was finally granted by the issuance of a writ of mandate, directed to the defendants. Seattle, Renton & Southern Railway Company and the Seattle Electric Company, as follows:

"You are hereby commanded that you and each of you, immediately upon receipt and service of this writ upon you, issue transfers, when demanded, upon presentation of a five-cent fare, or school children's ticket when presented by a school child, from all of your lines within the city limits to all of the lines of said other company, and that you and each of you receive the transfers so issued by such other company, and carry such passenger to any point on your line in the same general direction within the city limits, upon a basis of redemption by each company of two and one-half cents for every transfer issued by it on a five-cent fare and one and one-fourth cents for every transfer issued on a school children's ticket."

From this decision, the defendant Seattle, Renton & Southern Railway Company has appealed to this court.

The facts upon which the correctness of the decision of the trial court may be rested are, in substance, as follows: The appellant and the Seattle Electric Company each own and operate a system of street railway in the city of Seattle. These are the only systems of street railway in operation in the city. Appellant operates its system of railway under a franchise granted by the city to its predecessor in interest, containing a provision requiring it to give and receive transfers to and from all other systems of street railway in the city as follows:

"Transfers:—The payment of a cash fare or the presentation of a ticket shall entitle the passenger to a transfer to any line of any street railway company now operating within the city limits, or that may hereafter operate therein, which shall give and receive transfers to and from all the lines owned, operated or controlled by such company, to and from the lines

of grantee, his successors and assigns, on the basis of settlement that the transfer is to be redeemed at or for such a proportionate part of the fare paid as the run or local route of the car on which the transfer is received, bears to the sum of the runs of the local route of the cars from which the transfer is issued and on which the transfer is received; but no such transfer shall be good except upon the first connecting car at the point of transfer and upon a car going in the same general direction."

The Seattle Electric Company operates its system of street railway under franchises granted by the city, which the superior court has adjudicated in this case require that company to give and receive transfers to and from appellant's system of railway upon the terms specified in the writ of mandate above quoted. The Seattle Electric Company was a party defendant to this proceeding in the superior court, and it has not appealed from the final decision therein, which determined its duties and obligations relative to exchange of transfers with appellant. The railway system of appellant consists of a single line extending from the business center of the city to the city limits on the south, a distance of several miles. The railway system of the Seattle Electric Company consists of a network of lines covering largely the whole city. A passenger has the right to ride for a five-cent fare from one of the termini of the railway system of the Seattle Electric Company to another terminus thereof in the same general direction, or to any intermediate point. A passenger also has the right to ride from one terminus of the railway system of appellant to the other for a five-cent fare. School children have the same right upon the railway system of both companies upon presentation of a school children's ticket, which they may purchase from the respective companies at two and one-half cents each. The right of a passenger to so ride the entire distance between any two termini of each system of railway is not affected by the number of transfers it may be necessary for him to make from one car to another in accomplishing such a journey. In making such journey a pas-

senger would ride in some instances a greater, and in some instances a less, distance upon the Seattle Electric Company's system than he would upon appellant's system.

We have given no attention to the conditions under which the Seattle Electric Company may be required to exchange transfers with appellant under the franchises of the Seattle Electric Company as an original proposition. That question was finally adjudicated by the superior court, and as we have noticed, the Seattle Electric Company has not appealed therefrom. We need, therefore, to look no further than the language of the writ of mandate above quoted to ascertain what those conditions are. From that language it appears that the duties of the Seattle Electric Company and of appellant are the same towards the public and towards each other relative to exchange of transfers, unless we are to conclude that the superior court has erroneously determined the duties of appellant in that regard under its franchise. The question then is, not what the duty of the Seattle Electric Company is, but what is the duty of appellant under its franchise? If it be found that the conditions upon which appellant is required to exchange transfers under its franchise is consistent with the conditions upon which the Seattle Electric Company is required to exchange transfers, so that the rights of neither will be violated by enforcing such exchange, it will necessarily follow that the decision of the superior court is not erroneous. The position of counsel for appellant is, that it cannot be required to exchange transfers unless the basis of settlement for such exchange shall be as provided in its franchise. For the purpose of our present inquiry, we will adopt this view, though counsel for the relator argue that the basis of settlement is not necessarily the test of appellant's obligation to exchange transfers.

We have seen that appellant's franchise provides for exchange of transfers with any company now or hereafter operating street railways in the city which shall give and receive transfers to and from the lines of appellant, "On the

basis of settlement that the transfer is to be redeemed at or
for such a proportionate part of the fare paid as the run or
local route of the car on which transfer is received bears to
the sum of the runs of the local route of the cars from which
the transfer is issued and on which the transfer is received."
Thus it is plain that appellant is required to exchange trans-
fers with all companies operating street railway systems in
the city, whenever such company or companies consent to or
are required to exchange transfers with appellant upon the
basis of settlement set forth in its franchise.   This brings
us to the inquiry, What is that basis of settlement?

Counsel for appellant contend, in substance, that the proper
basis of settlement under its franchise is to give to each com-
pany such proportion of the fare of each passenger trans-
ferred as the distance traveled upon each system of railway
bears to the entire distance traveled upon both systems upon
such fare and transfer, treating the distance which the pas-
senger is so entitled to travel upon each system as the distance
actually traveled, and that this would result in appellant re-
ceiving more than one-half of the fare.   For the purpose of
our inquiry we will assume that it is practical to arrive at a
settlement upon this basis with a sufficient degree of accuracy,
if it is intended, by the terms of appellant's franchise, to
make that the basis of settlement.   Counsel for relator con-
tend, in substance, that each company is entitled to such pro-
portion of the fare as the distance the passenger may travel,
regarded as a unit, upon its system of railway bears to the
sum of all the distances the passenger may travel, each re-
garded as a unit, upon all the systems of railway over which
such passenger may travel upon such fare and transfers issued
therefor.   That is, the distance the passenger may so travel
upon each system must be regarded as a unit of equal value.
Now, if each system of railway, or rather the entire distance
upon each of which the passenger may ride for one fare and
transfers issued therefor, is a unit of equal value to be used
in computing the proportionate amount of the fare each com-

pany is entitled to, then the relator's contention is well'
founded.

We will first consider "*The run or local route of the car on
which transfer is received.*" Treating that as a unit for the
purpose of determining its value, as compared with the whole,
the question is suggested, does it mean that the passenger may
ride the same distance on that railway system as if he had
paid the usual fare, or does it mean that he may travel only
the distance run by the car upon which he first tenders the
transfer. It seems to us the words "local route," there used,
means the entire distance the passenger may travel upon that
system of railway as if he had paid the ordinary fare, whether
he changes cars upon that system or not. If we should hold
that the local route of that car meant only the distance that
the first car upon which the transfer is tendered proceeds,
that company could so regulate the running of its cars that
connect with the system issuing the transfer that such cars
would proceed from such connection a very short distance.
This is plain by reason of the fact that the distance each car
is run is within the control of the company operating the
system, as the evidence shows. There does not appear to
be any requirement that passengers shall be carried over a
route by one or any particular number of cars. This would
enable the company to practically nullify this transfer pro-
vision. We are of the opinion that this provision means that
such a transfer gives the passenger the same right to travel,
as to distance, over the railway system to which it is tendered
as if he paid an ordinary fare upon that system.

It seems to us the other units going to make up the whole
are to be measured by the same standard, that is, that each
consist of the entire distance a passenger may travel over each
of the systems of railway upon such fare and transfers issued
therefor as if he was paying an ordinary fare upon each of
such systems. The language defining the whole is, "*The sum
of the runs of the local route of the cars from which the trans-
fer is issued and on which the transfer is received.*" This

language, it is argued, was evidently used in view of the possibility of there being in the future more than two companies operating street railway systems in the city, and was intended to require such an exchange of transfer between all of such companies and appellant's system as would enable a passenger to ride the entire distance across the city in one general direction upon one fare, even though such passenger so rode over portions of the lines of all such railway systems regardless of their number. It may be that an attempt was thus made to provide such a general transfer system. We express no opinion as to how nearly it was accomplished by this language. However, we are here only concerned with two systems, and the language of this transfer provision of appellant's franchise furnishes a basis of settlement between two as it would between a greater number of systems. The word "sum" is as correctly used in referring to the result of two units added, as in referring to any number of units added. We conclude that each system of railway, or rather the entire distance a passenger may travel upon each system of railway in the city, constitutes a unit, the sum of which goes to make up the entire service required to be furnished a passenger upon payment of one fare. Each of these units, we hold, must be regarded as equal in quantity and value, and since there are here involved only two systems of railway, the distance a passenger is entitled to so ride upon each will be regarded a unit, and, of course, their sum as two. It follows that the appellant and the Seattle Electric Company are each entitled to one-half of the fare thus earned. This is the basis upon which the trial court decided that the settlement is to be made under appellant's franchise, and we think that decision is free from error.

It is suggested that appellant's franchise seems to require it to issue transfers upon the presentation to it of a ticket by a passenger, as well as upon a cash fare, and it appears in the evidence that it sells tickets in quantities at four cents each, which entitles a passenger to ride the entire length of its

railway in the city.   This is in no way involved in this case. The writ of mandate goes no further than to require the exchange of transfers upon the payment of a five-cent cash fare, and school children's tickets which are in effect two and one-half-cent cash fares.

We are of the opinion that the decision of the superior court should be affirmed.   It is so ordered.

Dunbar, C. J., and Morris, J., concur.

Gose, J. (dissenting)—I think the conclusion reached by the majority of the court does violence to the language of the franchise.   It would seem that if the city had intended that the appellant should give and receive transfers on the basis of an equal division of the fare, it would have so provided in plain and unequivocal terms.   It did provide, however, that the redemption should be made "for such a proportionate part of the fare paid as the run or local route of the car on which transfer is received bears to the sum of the runs of the local route of the cars from which the transfer issued and on which the transfer is received."   The meaning of the language quoted is somewhat obscure, but it is apparent to the writer that it means something else than that a transfer shall be made in all cases on the basis of an equal division of the fare. I think a reasonable construction of the words leads to the conclusion that the city intended that the redemption should be made on the basis of the distance traveled by each passenger over the respective lines.   This construction would protect the equities of the parties, and harmonize with the language of the franchise.

I therefore dissent.

Mount, J., concurs with Gose, J.