SEATTLE, R. & S. RY. CO. v. CITY OF SEATTLE et al.

(District Court, W. D. Washington, N. D. August 25, 1914.)

No. 1932.

1. STREET RAILROADS (§ 61*)—FRANCHISES—RIGHT TO REPEAL—WAIVER.

A city by ordinance granted a franchise to a street railroad company, subject to repeal for a violation of its conditions. Claiming such violation, and a disagreement having arisen, it brought two suits against the company to enforce the same. Afterwards it amended the franchise ordinance, ·by changing in part the line of the road. Still later it passed ordinances repealing the franchise ordinance. It did not, 'however, dismiss the suits, which were subsequently litigated to a final determination; one being taken to the Supreme Court of the United States. After passage of the repealing ordinances, the city required the company to make improvements and betterments at a cost of $50,000, passed an ordinance fixing a schedule for the operation of its cars, received taxes on its property, a material part of which was for franchise valuation, aggregating $47,000, and also a percentage of its gross earnings fixed by the franchise ordinance, and finally instituted proceedings to condemn its property, including its franchise, for a municipal line. *Held* that, if the company failed to comply with the requirements of the franchise ordinance, the city had two remedies—first, to compel compliance with its conditions; or, second, to declare a forfeiture of the franchise right by repeal; that having elected to pursue the first remedy, and persisted therein, and having by many acts recognized the franchise as still in force, it waived the right to repeal it, and the repealing ordinances were inoperative and could not be enforced.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 50-54; Dec. Dig. § 61.*]

2. STREET RAILROADS (§ 61*)—FRANCHISES—RIGHT OF FORFEITURE—WAIVER.

When a municipal corporation, after knowledge of an act or omission constituting a ground of forfeiture of a franchise granted, does any act which unequivocally recognizes the franchise as still existing and in force, a waiver of the forfeiture will be inferred.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 50-54; Dec. Dig. § 61.*]

In Equity. Suit by the Seattle, Renton & Southern Railway Company against the City of Seattle and others. On final hearing. Decree ·for complainant.

See, also, 190 Fed. 75.

On December 23, 1910, complainant commenced an action against the city of Seattle and members of the city council, alleging in substance that it was a corporation, and the owner of and operating an interurban line of railway extending from the city of Seattle to the city of Renton, King county, Wash.; that such line was completed and put in operation about the year 1906; that said railway had been in daily continuous operation, carrying passengers and freight and interchanging loaded and empty freight cars with the Columbia & Puget Sound Railway Company and the Northern Pacific Railway Company, having direct physical connection with such two companies in the city of Renton, and also carrying express and United States mail; that the railway was constructed and operated over and along a right of way owned by the company or its predecessors, from Fourteenth Avenue South to the city of Renton, and over Washington street in the city of Seattle, and that the only portion of the road operated upon any street in the city of Seattle was that part operated along Washington street from Fourteenth Avenue South to Railroad avenue; that one Bowman obtained a certain franchise from the defendant city to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

or erate a line of railway on said Washington street between Railroad avenue and Fourteenth Avenue South, thence over private property to the then city limits of the city, and constructed a line of railway thereon; that complainant became the owner by purchase of all of said railway property, including all rights, privileges, franchises, etc.; that the line so constructed was operated under and by virtue of the terms and conditions of said franchise and its amendments, until May, 1908; that in 1906 William R. Crawford, the president of the complainant, on behalf of the complainant company, obtained from the city of Seattle a franchise over the streets covered by the Bowman ordinance, and others, being Ordinance No. 15,919; that on the 18th day of May, 1908, the said Crawford assigned to the complainant all rights under said ordinance, together with all rights acquired under certain other ordinances passed by the defendant city; that on December 5, 1910, two resolutions were passed by the city council, charging complainants with noncompliance with the provisions of the franchise ordinances, and it was threatened to repeal the same. On December 23d this action was commenced, and on motion of the complainant a preliminary injunction was issued by Judge Hanford, but before the injunction was served the ordinances repealing the franchise ordinances were passed. Thereupon, on December 29th, a supplemental complaint was filed, and the matter came on for hearing on the pleadings of the complainant and the answer of the defendants, before Judge Donworth, who restrained the defendants until the final hearing of this cause, unless otherwise ordered by the court, from taking any further proceedings "that will interfere with or in any way prevent the operation of complainant's line of railway." Thereafter, on application by some of the bondholders, receivers were appointed for the railway company by the state court, who took possession of the property and hold the same now. On November 8, 1911, a cross-bill was filed by the defendant city, praying that the repealing ordinances be held valid, and that a forfeiture of the franchise be adjudged. A motion to strike the cross-bill was filed. Nothing further was done until June, 1914, when a motion was brought on for hearing to modify the restraining order. By agreement of all of the parties, the cause was assigned for hearing upon the merits, and the city withdrew its cross-bill, and a second supplemental complaint was filed, and answer thereto, in which the defendant prays "that the action of the complainants herein be dismissed with prejudice, and that said ordinances * * * repealing the franchise of the complainants herein be held valid, and that a forfeiture of said franchise be duly adjudged."

The testimony upon the trial at the final hearing fairly shows: That the complainant is operating a line of railway under the provisions of Ordinances No. 15,919, No. 25,038, and No. 2,088. The line operated extends from Stewart street, over and along Fourth and Fifth avenues, Dearborn street, and Rainier avenue, to Renton. The track from Third avenue to Fifth avenue, including the Y on Stewart street and second track on Fourth avenue, from Stewart to Pike street, was constructed since December 23, 1910. Prior to the autumn of 1909, the line extended from Railroad avenue along Washington street to Fourteenth Avenue South, thence to the city limits, and was extended to Renton in the fall of 1906. This was operated under franchise No. 1,441, granted to S. L. Bowman, who sold the same to the Seattle, Renton & Southern Railway Company. W. R. Crawford, who was president of the company, on behalf of the company, for the purpose of getting into the business district of the city at Pike street, was granted franchise No. 15,919, under which, together with the amendments thereto, the complainant is now operating. The complainant owned a private right of way along the line of its road between Washington street and Renton. By the provisions of Ordinance No. 15,919, the complainant was required to convey to the city all of its interest in this land for street purposes, and release all rights in the Bowman ordinance, and was also required to pay to the city 2 per cent. of its gross annual earnings. The transfer of the right of way to the city and release of rights in the Bowman ordinance was duly made, as provided by the ordinance, which ordinance further provided that the grantee shall keep on deposit in the city treasury to the credit of the board of public works $1,000 as an "emergency fund," to enable the board to repair any dangerous places along the street of the right of way required to be made under said franchise, which was done.

It also provides that a bond in the sum of $15,000 shall be filed, conditioned that the grantee shall construct, acquire, and put into operation in good faith the said line of railway, etc., and further provides that "this grant is subject to the right of the city of Seattle to at any time hereafter repeal, change, or modify this ordinance if the franchise granted hereby is not operated in accordance with the provisions of this ordinance, or at all, and the city of Seattle reserves the right at any time hereafter to so repeal, change or modify this grant," and further provides "that the grantee * * * may * * * take a passenger fare * * * not to exceed five cents for a single continuous ride one way over any line or lines owning, controlling or operating * * * between points situated within the city limits or the town of Columbia, * * * *" and that the grantee shall keep on sale for $1 each, at its main office and at such other places as are reasonably convenient within the city, commutation tickets, entitling the purchaser to twenty-five rides with the same privileges as in the case of cash fares, except that grantee shall be entitled to charge five cents upon through or "express" cars, and that school children going to and returning from school shall ride for half fare. They shall be entitled to 2 tickets for 5 cents or 50 tickets for $1. The ordinance further provides that the payment of the fares, either cash or ticket, shall entitle the passenger to a transfer to any line of any street railway company operating within the city limits which shall give and receive transfers to and from the line of the grantee, on the basis of settlement that the transfer is to be redeemed at or for such proportionate part of the fare paid as the run or local route of the car on which the transfer is received bears to the run or local route of the cars from which the transfer is issued and on which the transfer is received, such transfers to be good upon the first connecting car at the point of transfer, going in the same general direction. Prior to 1909 the line of railway operated by the complainant extended from Railroad avenue, over Washington street, to the city limits. The grade upon Washington street was 13½ per cent., and cars could only be operated by the use of a counterweight. This was not satisfactory, and when the line was constructed over Fourth avenue to Pike street, the Washington street line was abandoned, and the line extended to and over Dearborn street. The complainant took over the system owned by the Seattle, Renton & Southern in harmony with the provisions of Ordinance No. 15,919, and thereafter double-tracked the system to Kenyon street and made other necessary improvements. About one mile was double-tracked in 1908, and about four miles afterwards, including Fourth avenue, from Washington to Stewart street, in 1909. Complainant paid for improvements after May, 1908, and up to December 23, 1910, exclusive of cars, something over $200,000.

After the passage of Ordinance No. 15,919, the limits of the city were extended, and the company failed to carry the passengers for a 5-cent fare from within the city limits beyond the old limits, after the extension of the city's boundaries, and failed to give and receive transfers to and from connecting lines. The railway company also failed to furnish sufficient accommodations for the carrying of the passengers or parties desiring to be transported over the lines during the rush hours of the day, and the cars were overcrowded, and many persons were not able to secure accommodations within a reasonable time. This condition, however, was materially improved after the abandonment of the Jackson street line and the increase of the number of cars; nine steel cars having been added, some of which were purchased by the company and received prior to December 23, 1910, but had not been used because of the regrading of the streets in the city, and they could not be operated over the Jackson street incline. The complainant expended, in compliance with demands made by the city, after the 23d of December, 1910, on Main street, between Fourth avenue and Fifth avenue, on Washington street, near Twelfth Avenue South, on Fourteenth avenue, between Pike and Stewart streets, and on Stewart street, between Third and Fifth avenues, a sum approximating $50,000. The complainant and the receivers, since the last date named, have expended for new equipment and betterments to the line of railway a sum in excess of $145,000.

On the 5th day of December, 1910, resolutions Nos. 3,039 and 3,040 were passed by the city council, which were based upon charges filed by the super-

intendent of public utilities, charging the company with "failure to provide adequate local service and sufficient number of places where commutation tickets were sold; failure to provide a sufficient number of local cars, so that the users of commutation tickets who lived north of Kenyon street could avail themselves of the 4-cent fare; failure to replace old-style, inadequate cars with sufficiently modern equipment; failure to repair promptly, on order of board of public works, the defective track pavement and special work within the right of way; failure to install safeguards provided by the state law, until serious accidents have resulted; failure to observe provisions of Ordinance No. 24,721, providing for the proper sanitation of the cars. Many of the requests made by the city were complied with by complainant. The matter of 5-cent fares beyond the limits of the city, at the time the ordinance passed, and the matter of providing for transfer from complainant's line to other car lines in the city, were two propositions upon which no concessions were granted. The line of complainant being considerably longer than any other line in the city, the complainant was unable to make arrangements upon a basis of settlement for such proportionate part of the fare paid as the run on the local route of the car on which the transfer is issued bears to the sum of the runs on the local routes of the cars upon which the transfer is received, as computed by complainant. The superintendent of public utilities estimated a settlement upon a basis of 59½ per cent. to complainant and 40½ per cent. to the other lines. Complainant was willing to adopt such scale, but the other line declined, except on a 50–50 per cent. basis. Complainant contended that the limits of the city as fixed at the time of the passage of the ordinance was the point which should determine the 5-cent rate. The complainant further contended that the matter of fares was within the exclusive jurisdiction of the public service commission of Washington (Laws Wash. 1907, c. 226). The public service commission, by order entered on the 12th day of October, 1910, did assert jurisdiction over the complainant road in a matter pertaining to the operation of the said road, in cause No. 168, pending before the said commission, entitled "The Railway Commission of Washington ex rel. George W. Salisbury, Complainant, v. The Seattle, Renton & Southern Railway Company." To enforce these provisions of the ordinance, several actions were prosecuted in the courts of the state on behalf of the city in the name of private individuals, at the expense, however, of the city, and pursuant to resolutions of the city council. These were litigated to a final determination, the hearing in the respective cases being before the Supreme Court in January and June, 1911. See State v. Seattle, R. & S. R. Co., 62 Wash. 124, 113 Pac. 260; Id., 62 Wash. 544, 114 Pac. 431; Id., 64 Wash. 167, 116 Pac. 638. It further appears that on several occasions prior to this date the superintendent of public utilities had reported to the city council the inefficient service and noncompliance with the provisions of the ordinance on the part of complainant, and recommended the revocation of its franchise. The city council declined to take any affirmative action upon these charges, and did not act until the charges last referred to were filed, and after a public hearing had been granted by the city council, which was held in a public hall in the city of Seattle, where large numbers of people residing in the community met with the city council and gave their views of the conditions then existing. On December 23, 1910, the repealing ordinances were enacted.

In September, 1910, the city council passed Ordinance No. 25,038, amending Ordinance No. 15,919, in which part of the route over some streets was changed. On January 9, 1911, the city council passed Ordinance No. 26,069, entitled: "An ordinance declaring the advisability of a city electric railway on Rainier avenue, and other streets, avenues and ways, and providing for the same, specifying and adopting the system or plan proposed, declaring the estimated cost thereof, as near as may be, and providing for the submission of such system or plan, and the incurring of an indebtedness therefor to the qualified voters of the city for their adoption and assent thereto, or for their rejection thereof, at a special election to be held on the day of the general city election, on the 7th day of March, 1911." This ordinance, containing the exercise of the common user rights reserved to the city by Ordinance No. 15,919, as amended by Ordinance No. 25,038, was submitted to a vote of the people at such special election, and was adopted by the

voters, and on the 13th of October, 1911, the city council passed, and the mayor approved, Ordinance No. 28,138, entitled "An ordinance providing for the condemnation, appropriation and damaging of all that certain line of electric street railway herein described, owned and operated by the Seattle, Renton & Southern Railway Company, within the limits of the city of Seattle, together with all private rights, privileges, easements and equipment, and appurtenances, if any, appertaining thereto and used in and about the operation and maintenance thereof, and of all right, title or interest of said company, and of all other persons or corporations therein, and providing for the payment of the just compensation to be made therefor." Thereafter, on the 30th of April, 1912, the city of Seattle commenced a condemnation proceeding in the state court against the complainant railway, seeking appropriation of its lines within the city of Seattle, pursuant to this ordinance. The petition of appropriation included the physical properties of the railroad company and also its franchises.

On the 23d day of February, 1913, the state court entered its order of ad-. judication of public use in said cause. The receivers not having been made parties, the Supreme Court, on certiorari proceedings, set aside the order of adjudication. On the 20th of February, 1911, the council of the defendant city passed Ordinance No. 26,451, providing a schedule for the operation of the passenger cars of the complainant company over certain streets along its line in the city, and the complainant company conformed to such schedule upon request by the defendant city, until the ordinance was repealed. On the 6th day of May, 1912, the city council passed Ordinance No. 29,364, being an ordinance providing for the laying off, extending, widening, and altering, etc., of Rainier avenue, from Jackson street to Thistle street, and from Fifty-First avenue south to the southerly boundary of the city of Seattle; and thereafter, on the 14th day of May, the city of Seattle instituted in the state court a condemnation suit under said ordinance, served process on the complainant by personal service, and upon the trial before a jury the city introduced in evidence exemplified copies of Ordinance No. 15,919 and of the deed from the complainant company to the city, transferring a certain right of way for street purposes, as provided in Ordinance No. 15,919, for the purposes there declared of showing that the railway company was not entitled to compensation for any portion of its private right of way north of Kenyon street, because said deed had been executed conformably to the terms of said ordinance.

The complainant company and its receivers have paid municipal taxes due the city of Seattle in the amount provided by law—for the year 1911, $11,396; for the year 1912, $13,890; and for the year 1913, $22,631. For the said years the franchise of the complainant company over the streets of the city comprised a material valuation for tax purposes. The complainant company, prior to the year 1912, paid to and the city received annually the 2 per cent. upon the gross earnings of the company, pursuant to the provisions of Ordinance No. 15,919 and amendments thereto. The city refused to receive the 2 per cent. of such receipts for the years 1912 and 1913. The city has retained all of the deposits made pursuant to the provisions of the ordinances under which franchises have been granted, and likewise has accepted and holds the bond for $15,000, provided by ordinance, which bond has been kept alive by the receivers by the payment of the annual premiums. The complainant company, or its receivers, pursuant to the ordinances of the city, paid all charges for inspection of improvements made on its line in the city upon statements rendered by the proper department of the city to the present time.

Harold Preston, of Seattle, Wash., for complainant.

James E. Bradford and Ralph S. Pierce, both of Seattle, Wash., for defendants.

Before CUSHMAN and NETERER, District Judges.

NETERER, District Judge (after stating the facts as above). The complainant contends, in oral argument, no briefs being filed, first, that

the reserved power of the city to repeal the franchise ordinance is equivalent to the rescission clause in a private contract, and the franchise being a contract between the parties (Dern v. Salt Lake City Ry. Co., 19 Utah, 46, 56 Pac. 556), it is governed by the general rules applicable to contracts, and that before the city could repeal the franchise and declare a forfeiture, it must return, or offer to return, the strip of land along and over which the road in issue is built, and the Bowman franchise, received in consideration of the passage of the franchise Ordinance No. 15,919, and having failed to place the parties in statu quo, it cannot maintain this action (Andrews v. Hensler, 6 Wall. 254, 18 L. Ed. 737; German Savings Inst. v. Machinery Co., 70 Fed. 146, 17 C. C. A. 34; Kauffman v. Raeder, 108 Fed. 171, 47 C. C. A. 278, 54 L. R. A. 247; Minah Consolidated Mining Co. v. Brisco (C. C.) 47 Fed. 276; Doughten v. Bldg. Assn., 41 N. J. Eq. 556, 7 Atl. 479; Hanna v. Haynes, 42 Wash. 284, 84 Pac. 861; 28 Cyc. 384); second, that either party may waive any breach of the conditions of the franchise ordinance contract, and that anything that would constitute a waiver of a breach in a contract constitutes a waiver of the conditions of the ordinance, and that defendant had waived all delinquencies of complainant, if any; and, third, that even though the court should find that the complainant had made default in some of the conditions of the ordinance, that complainant had two remedies—(a) to compel compliance with the conditions of the ordinance; or (b) to rescind the ordinance—and, having elected to enforce the provisions of the ordinance, cannot claim forfeiture, and that from the evidence it must be concluded that the complainant has expended large sums of money in building up the railway, and that there are not now any delinquencies on complainant's part, and a court of equity would not, under such circumstances, destroy property that is being built up. The respondent vigorously contends that the city was not, under the reserved power of the ordinance, required to tender the right of way strip, and that the acts done by the city did not constitute an election or waiver, and, a forfeiture having been declared by the city, the court should so decree.

The following authorities are cited by the city: Benton v. Seattle Electric Co., 50 Wash. 161, 96 Pac. 1033; Ewing v. City of Seattle, 55 Wash. 229, 104 Pac. 259; Farnsworth v. Minnesota & Pac. R. R. Co., 92 U. S. 49, 23 L. Ed. 531; Sioux City St. Ry. Co. v. Sioux City, 138 U. S. 98, 11 Sup. Ct. 226, 34 L. Ed. 901; Tacoma Ry. & P. Co. v. City of Tacoma, 140 Pac. 565; State of Wash. ex rel. Sylvester v. Super. Court, 60 Wash. 279, 111 Pac. 19; Farmers' Loan & Trust Co. v. City of Galesburg, Ill., 133 U. S. 156, 10 Sup. Ct. 316, 33 L. Ed. 581; Wheeling & E. C. R. Co. v. Triadelphia, 58 W. Va. 487, 52 S. E. 499, 4 L. R. A. (N. S.) 333; Union St. Ry. v. Snow, 113 Mich. 694, 71 N. W. 1073; Daly v. City of Carthage, 143 Mo. App. 564, 128 S. W. 266; City of Belleville v. Citizen's Horse Ry. Co., 152 Ill. 171, 38 N. E. 585, 26 L. R. A. 681; Southern Bell Telephone & Telegraph Co. v. City of Richmond (C. C.) 98 Fed. 672; Boston Electric Light Co. v. Boston Terminal Co., 184 Mass. 566, 69 N. E. 346; Los Angeles Ry. Co. v. City of Los Angeles, 152 Cal. 242, 92 Pac. 490, 15 L. R. A. (N. S.) 1269, 125 Am. St. Rep. 54; Peterson v. Tacoma Ry. & P. Co., 60

Wash. 406, 111 Pac. 338, 140 Am. St. Rep. 936; Com. Elec. L. & P. Co. v. Tacoma, 17 Wash. 670, 50 Pac. 592; Tacoma v. Boutelle, 61 Wash. 434, 112 Pac. 661; State v. West End Light & Power Co. (Mo.) 152 S. W. 79; 2 Pomeroy's Equity Jurisprudence, § 805, p. 1423.

[1] The conclusion we have reached makes it unnecessary to discuss the question of tender. We think the election of remedy and waiver determine the issue, and these, being so interwoven, will be discussed together.

We do not deem it necessary to enter upon an extended discussion as to whether the complainant made default in the conditions of the ordinance. The condition of the streets over which its franchise extended during the time covered by the controversy by reason of street improvements was unusual. Upon the matter of fares and transfers there must have been an honest difference of opinion (Seattle Electric Co. v. City of Seattle [D. C.] 206 Fed. 955), and that issue was on the date of the passage of the repealing ordinances pending in the state court for adjudication. That the community was not adequately served during a portion of the time in issue cannot be doubted. Whether the conditions referred to were such as to justify complainant will not be entered upon.

[2] The city, upon the failure of the complainant to carry out the provisions of the franchise ordinance, if default was made, had two remedies: First, to compel compliance with the provisions of the ordinance; or, second, to declare a forfeiture of the franchise right. The election of one remedy with full knowledge is an irrevocable bar to the other. The Fred E. Sander (D. C.) 212 Fed. 545; Thompson v. Howard, 31 Mich. 309; Achey v. Creech, 21 Wash. 319, 58 Pac. 208; In re Pederson's Estate, 97 Minn. 491, 106 N. W. 958.

The city, in June, 1910, commenced two actions for the enforcement' of the fare and transfer provisions of the ordinance, respectively, in the state court, in the name of State ex rel. Linhoff v. Seattle, R. & S. R. Co., 62 Wash. 544, 114 Pac. 431, and State ex rel. Dennison v. Seattle, R. & S. R. Co., 64 Wash. 167, 116 Pac. 638, respectively. This was an election on the part of the city to compel compliance with the conditions of the franchise ordinance. This election was confirmed in September, 1910, when an ordinance was passed by the defendant city, amending Ordinance No. 15,919, changing the route over some of the streets in the franchise, and while the repealing ordinances were passed on December 23, 1910, the city did not abandon the actions, but in January and February, 1911, the causes were tried in the state trial court, and thereafter, during the same year, were tried before the Supreme Court of the state, and later one of the causes appealed to the Supreme Court of the United States, 231 U. S. 568, 34 Sup. Ct. 185, 58 L. Ed. 372; the city's counsel appearing on behalf of the complainant before each of the courts named, at the expense of the city.

"When the state, or any subordinate governmental body to whose charge the matter has been committed, after knowledge of the act or omission constituting a ground of forfeiture, does any act which unequivocally recognizes the franchise as still existing and in force, a waiver of the forfeiture will be inferred." Santa Rosa City Ry. v. Railway Co., 4 Cal. Unrep. 950, 38 Pac. 986.

The defendant contends that the Santa Rosa City Railway Case is distinguishable from the instant case in this: That in that case the forfeiture had not been declared when the amended ordinance was passed, while in the instant case the forfeiture was declared after the amended ordinance was enacted, and that, the conditions of the ordinance being continuing, that subsequent default would be presumed. The continued conduct of the city in harmony with the remedy selected, and the spirit of the amendment, when considered with the recognition given the franchise ordinance in the ordinances subsequently passed with relation to the municipal line, the condemnation of complainant's railway line, and condemnation of land for widening of Rainier avenue, and reception of benefits as disclosed, we think, answers the argument. A party cannot "blow hot and cold at the same time." The city cannot "eat its cake and keep it, too." The enforcement of the provisions of the franchise ordinance and repealing the ordinance are inconsistent, and both remedies cannot be pursued. Farmers' Loan & Trust Co. v. City of Galesburg, 133 U. S. 156, 10 Sup. Ct. 316, 33 L. Ed. 573; Robb v. Vos, 155 U. S. 14, 15 Sup. Ct. 4, 39 L. Ed. 52; Allen v. Webb, 24 N. H. 278; Weeks v. Robie, 42 N. H. 316; Pfeiffer v. Marshall, 136 Wis. 51, 116 N. W. 871; Genet v. Delaware & H. Canal Co., 28 App. Div. 328, 51 N. Y. Supp. 377; Smith v. Berryman, 173 Mo. App. 148, 156 S. W. 40; State v. People's Ice Storage & Fuel Co., 246 Mo. 168, 151 S. W. 101; Pickle v. Anderson, 62 Wash. 552, 114 Pac. 177; Holt Mfg. Co. v. Strachan, 77 Wash. 380, 137 Pac. 1006; Conrow et al. v. Little et al., 115 N. Y. 387, 22 N. E. 346, 5 L. R. A. 693; A. Klipstein & Co. v. Grant, 141 Fed. 72, 72 C. C. A. 511; German Savings Inst. v. Machinery Co., 70 Fed. 146, 17 C. C. A. 34.

The fact that the city passed the amendatory ordinance, and failed in even an attempt at abandonment of the remedy selected by dismissing the actions commenced, upon passing the repealing ordinances and continuing to pursue the remedy selected, strongly emphasized the election of remedy theretofore made and subsequent affirmance; but, in addition, it passed an ordinance fixing a schedule for the operation of complainant's cars operated under the franchise in issue, and passed the further ordinances in which special recognition was given to the validity of Ordinance No. 15,919, as disclosed in the statement of facts preceding this opinion. The city required the expenditure of more than $50,000 in street improvements and betterments along the complainant's tracks, and received $47,917 in city taxes, a material part of which was for franchise valuation, received 2 per cent. on the gross earnings of the complainant pursuant to the ordinance for the years prior to 1912, retained the deposit made by the complainant for street improvements pursuant to the ordinance, and presented bills for inspection by the utilities department for the improvements and betterments covering the entire period of time to the present. The city cannot derive any benefits from the franchise and yet rescind the ordinance which gives it life. The franchise must be nullified in toto or not at all. Lyon v. Bertrand, 20 How. 149; Stuart v. Hayden, 72 Fed. 402, 18 C. C. A. 618. The contention of the defendant on the argument that the restraining order prevented it from enforcing the repealing ordinances,

and what was done was simply in harmony with keeping the property in statu quo, and not done with any intent or purpose of giving Ordinance No. 15,919, and amendments, recognition or vitality, cannot overcome the affirmative acts disclosed by the record, in the absence of an agreement or understanding between the parties that such acts should not be considered an affirmance. McNaught v. Equit. Life Assurance Society, 136 App. Div. 774, 121 N. Y. Supp. 448.

After the reception and holding of the taxes and the gross per cent. provided by the ordinance, and benefit of the sums expended for street improvements, deposit made by complainant pursuant to the franchise ordinance, payment of inspection charges to utilities department of the defendant for improvements and betterments made, and recognition of the validity of the franchise ordinance, as disclosed by the record, all done after the selection of remedy as stated in this opinion, the city will not be permitted to contend that the repealing ordinances have any vitality. To hold otherwise appears to us, under the record, would be violative of the principle of fair dealing and sound morality.

The repealing ordinances will be held inoperative, and defendant enjoined from enforcing any of the provisions thereof.