SAMUEL C. MARTIN vs. THOMAS B. WITHERSPOON & others.

Suffolk. Nov. 16, 1882. — June 20, 1883. W. ALLEN & HOLMES, JJ., absent.

Under the St. of 1862, c. 176, § 17, an order of the Governor and Council, providing that an outward bound vessel, liable to pilotage if inward bound, shall be held to pay pilotage to the pilot offering his services, whether such services are accepted or not, is valid.

CONTRACT against the owners of a vessel for pilotage. The case was submitted to the Superior Court, and, after judgment for the plaintiff, to this court on appeal, upon an agreed statement of facts, in substance as follows:

The plaintiff was a duly commissioned pilot for the port and harbor of Boston, and was acting as such on May 8, 1880. The defendants were then the owners of a certain bark, of four hundred tons burden and sixteen feet draft of water, and the defendant Smith was master of the vessel. The plaintiff, on the above date, offered his services as pilot to Smith, who was then on board and in command of the vessel, then lying at a wharf in Boston, and about to start on a voyage from that port to a foreign port, Trinidad, to pilot said vessel out of the harbor of Boston on her departure therefrom for said voyage, which offer was refused by Smith. Thereupon the plaintiff informed Smith that the vessel would be held to pay the regular fees for pilotage, whether his services were accepted or not; and afterwards, on the same day, the vessel started on her voyage, and left the port and harbor of Boston, Smith acting as pilot. The bark was a vessel liable, by the laws of this Commonwealth and the regulations then in force in relation to pilotage in said harbor, to pay compulsory pilotage when bound into the harbor as a port of destination. The plaintiff made effort and occupied some time in going to the bark and offering his services. The plaintiff piloted the bark into the harbor and port of Boston upon her arrival thereat on her voyage next preceding her departure, for which service the defendants have paid the plaintiff.

If the plaintiff was entitled to recover outward pilotage fees, on the above facts, judgment was to be entered for him in the

sum of $36, and interest thereon from said May 8; otherwise, judgment for the defendants.

*A. B. Coffin*, for the plaintiff.

*J. B. Richardson*, for the defendants.

DEVENS, J. If we assume, in favor of the contention of the defendant, that the expressions and language of the Gen. Sts. *c.* 52, and of the St. of 1862, *c.* 176, do not justify the inference that there was any provision authorizing compulsory pilotage to be exacted from outward bound vessels, there remains the inquiry as to the force and effect to be given to the order of the Governor and Council, which was proclaimed by the Governor on September 13, 1865.* By that order an outward bound vessel was made liable to pay compulsory pilotage fees when pilotage was tendered under such circumstances as appear in the case at bar.

The St. of 1862, *c.* 176, § 17, provided that the commissioners of pilots for the harbor of Boston might recommend to the Governor and Council such changes or modifications of the pilotage regulations for the ports and places within their jurisdiction as they deemed proper; and such modifications or changes, when approved by the Governor and Council, and proclaimed and published in the manner provided, were to have the force of law.

The defendants contend that it was not in the power of the Legislature to delegate to the Governor and Council the authority to establish this liability, and that it did not intend to do so. What the Legislature intended may be gathered, to some extent at least, by considering what were the provisions of law as to compulsory pilotage previously to the adoption of the Gen. Sts. *c.* 52. The St. of 1783, *c.* 13, made an outward bound vessel liable for pilotage fees. Such was also the law of 1796, *c.* 85, in reference to which this court has said that it " cannot be construed to give any vessel bound out, excepting coasting and

---

* This order is as follows: " Each outward bound vessel, liable to pilotage if inward bound, shall be holden to pay to the pilot who brought her into port, or to some pilot of the same boat if he offer his services, or, in case he does not so offer before she gets under way; or, in case she had not been piloted into port, to the pilot who shall first so offer, the regular pilotage fees, whether his services be accepted or not."

fishing vessels, the privilege of sailing without a pilot." *Tilley* v. *Farrow*, 14 Mass. 17.   The St. of 1829, *c.* 2, and the Rev. Sts. *c.* 32, §§ 7–12, certainly contemplate that, in some cases at least, outward pilotage is to be paid.   Nor are these provisions of the Revised Statutes controlled, as the defendant contends, by the St. of 1847, *c.* 279, which provides that a master "may pilot his own vessel into, or out of, any port in this Commonwealth, other than the port of her destination."   While awkwardly expressed, as the port which a vessel is leaving is not a port of destination but of departure, its meaning obviously is that a vessel may go in and out of any port in the Commonwealth, on her way to her port of destination, without being liable to pilotage fees.   The Gen. Sts. *c.* 52, while it operated to repeal former statutes, still enacted that existing regulations should continue in force which were not inconsistent with it.   It provided for the duties of pilots of all vessels, not limiting them to those of incoming vessels, and reënacted a regulation which required all vessels taking steam towage "into or out of" her port to pay full pilotage.

The regulations which existed at the time, except so far as they were then modified or changed, were embraced in the St. of 1862, *c.* 176, which was a revision of the laws on the subject of pilotage.   They provided, in the special regulations for the harbor of Boston, for the duties of pilots as to outward bound vessels, and their relations to each other in regard to them.   By Reg. 17, "every regularly appointed pilot is authorized and directed to take charge of any vessels within the limits of his commission," except certain vessels named or defined.   By Reg. 4, outward bound vessels are requested, in all cases, to give a preference to the pilot who had brought the vessel into port; and, by Reg. 3, it is provided that "no vessel shall be liable to pilotage in or out of any port other than her ports of departure and destination."

In view of these various provisions and regulations of the St. of 1862, *c.* 176, we are brought to the conclusion that, if they fail in terms to provide that outward bound vessels shall take pilots from their port of departure, it was the intention of the Legislature to enact that the Governor and Council might determine, under § 17, when — that is, under what circumstances —

and where they should thus take them, and, according to the usual provision of such regulations, to subject them to the pilotage fees if they neglected so to do.

This is not a surrender of the power of legislation to the Governor and Council upon the recommendation of the pilot commissioners, but simply an authority to control, in the matter of pilotage, the vessels going out of the harbor, as well as those coming into it. Such regulations are in the nature of police regulations, the making of which, within defined limits, may be entrusted to other bodies than the Legislature. It would not be questioned, we presume, that the Governor and Council might change the lines within which pilots are to be taken by incoming vessels, yet this would be to fix the liability of the vessel for pilotage by a regulation. It is hardly more to prescribe under what circumstances outgoing vessels shall be compelled to take pilots, legislative regulation having already determined in most important respects the duties of pilots in relation to such vessels, and provided that they shall only be required to take pilots from their port of departure.

The power to make pilotage regulations has often been delegated in this State. The regulation under discussion has been fully recognized by the Legislature, since 1865, as the existing law. This is shown by the Sts. of 1871, c. 351, and 1873, c. 284, which exempt certain vessels coming in or going out of the harbor from compulsory pilotage. It is also to be observed that the Pub. Sts. c. 70, § 27, passed subsequently to the cause of action in the case we are considering, recognize it distinctly as the law.

While the St. of 1869, c. 236, repealed § 17 of the St. of 1862, c. 176, this does not affect the inquiry, as the repeal did not affect regulations theretofore lawfully made under that section.

*Judgment affirmed.*