EDMUND D. CODMAN & others *vs.* GEORGE G. CROCKER
& others.

Suffolk.    June 22, 1909. — September 10, 1909.

Present: KNOWLTON, C. J., HAMMOND, BRALEY, SHELDON, & RUGG, JJ.

*Equity Jurisdiction*, Bill of ten taxable inhabitants. *Boston Common. Boston Transit Commission. Public Officers. Constitutional Law*, Vested Rights, Obligation of contracts, Eminent Domain, Delegation of legislative authority. *Statute*, Construction.

Whether, upon a bill by ten taxable inhabitants under R. L. c. 25, § 100, this court have jurisdiction of a suit to enjoin the members of the Boston Transit Commission from constructing a tunnel from Cambridge under a part of Boston Common to the subway station near Park Street in pursuance of the authority given by St. 1906, c. 520, the court here did not find it necessary to determine, being of opinion that, if they had jurisdiction, the plaintiffs had shown no ground for relief; but the jurisdiction was doubted, because the proceedings sought to be enjoined were in charge of a board of public officers over whom the city had no control and were conducted under an act of the Legislature which left the city no alternative in the performance of its duties.

Boston Common was dedicated by its owners and was set apart by the town in

1634 " for the common use of the inhabitants of Boston as a training field and cow pasture." It long has been settled that the legal title to the property vested in the town of Boston as a municipality, for the public uses referred to in the language quoted, and the city of Boston now holds the land for these public uses. The inhabitants are to use it in common for such purposes as require that it shall be accessible to all as a common to be enjoyed by the public, the two ways specified in the dedication being only typical as representing the common uses for which there was occasion at that time.

Except in the exercise of the right of eminent domain, Boston Common could not be appropriated to a public use inconsistent with the general character of the use for which it originally was dedicated and set apart, and it is possible that there has been such an acceptance of the dedication of the original donors by the town and city of Boston and by the Legislature under different statutes as to amount in this respect to a public trust and deprive the public authorities of the right of eminent domain, which otherwise they would have, to devote the property to a public use of an entirely different kind.

St. 1906, c. 520, in authorizing the construction of a tunnel under a part of Boston Common to the subway station near Park Street in such a way that the occupation of the Common above the surface hardly will be changed perceptibly, and increasing the facilities for approaching the Common, does not authorize any use of the Common inconsistent with the purposes of its original dedication.

The title to Boston Common is held by the city of Boston in its municipal capacity merely as an agency of the government for the benefit of the public, which is represented by the Legislature. Accordingly St. 1906, c. 520, in authorizing the construction of a tunnel under a part of Boston Common, is none the less valid because it contains no provision for a vote of the city government or of the citizens of Boston.

St. 1906, c. 520, authorizing the construction of a tunnel under a part of Boston Common, contains in § 23 the following provision: " If the tunnel hereinabove described is constructed, it shall, except as otherwise expressly provided herein, be constructed and paid for upon and under the same terms, conditions and provisions, . . . as are prescribed by chapter five hundred and thirty-four of the acts of the year nineteen hundred and two for construction of the tunnel therein provided for." The statute referred to contained a provision that it should be submitted for acceptance to the voters of the city at the next municipal election. *Held,* that the reference to the previous statute did not relate to the question whether the tunnel should be constructed, but only to the question how it should be constructed after it was determined that it should be built, and such determination was provided for in St. 1906, c. 520, with no provision for a submission to the voters.

The Boston Transit Commission are an administrative board of public officers, whose members in deciding questions delegated to them by the Legislature do not act judicially but as representatives of the public in the administration of the law, and such a board may act by a majority of their members, if all have had notice and an opportunity to act. Accordingly the determination by a majority of that commission that a tunnel should be constructed under a part of Boston Common in pursuance of the authority given by St. 1906, c. 520, was lawful and binding.

The provision of St. 1906, c. 520, § 23, conferring on the Boston Transit Commission authority to determine whether a tunnel from Cambridge should be constructed under a part of Boston Common to the subway station near Park Street or whether instead a subway should be constructed by an alternative

route, does not involve any unconstitutional *delegation of legislative authority,* but was a delegation only of such powers as lawfully may be exercised by boards of public officers.

KNOWLTON, C. J. This is a bill brought by ten taxpayers of the city of Boston against the city, the members of the Boston Transit Commission, and one McGovern, a contractor, to obtain an injunction against the construction of a tunnel from Cambridge under a part of Boston Common to the subway station near Park Street. The suit was commenced under the R. L. c. 25, § 100. The Boston Elevated Railway Company, as an interested party, was permitted to intervene as a defendant.*

There is at least a grave question whether we have jurisdiction of the case under this statute, since the proceedings sought to be enjoined are in charge of a board of public officers over whom the city has no control, and they are conducted under an act of the Legislature which leaves the city no alternative in the performance of its duties. In *Prince* v. *Crocker,* 166 Mass. 347, jurisdiction was taken under a statute like this, as the city, by vote, had voluntarily given the act effect. But for the reason stated in the opinion in *Browne* v. *Turner,* 176 Mass. 9, we do not find it necessary to determine this question. If we have jurisdiction, we are of opinion that the plaintiffs have not shown a case that calls for relief. We therefore consider the substantive matters discussed by the parties.

The act principally relied on is the St. 1906, c. 520, which authorizes the Boston Transit Commission to construct this tunnel for use in the operation of a railway between Boston and Cambridge. The most important and difficult question in the case is whether the Legislature had constitutional authority to provide for the construction of such a tunnel under a part of Boston Common, in view of the uses to which the Common was dedicated by its owners in 1634. It is averred in the bill that it was then set apart "for the common use of the inhabitants of Boston as a training field and cow pasture." No further particulars of the dedication are stated in the bill, but it has been held repeatedly that the legal title to the property vested in the

---

* The case was reserved by *Braley,* J., upon the bill and so much of the answers as were by way of demurrer, for determination by the full court.

town of Boston as a municipality, for the public uses referred to in the language above quoted. The city of Boston has succeeded to the town, and it holds the land for these public uses. See *Higginson* v. *Turner*, 171 Mass. 586 ; *Steele* v. *Boston*, 128 Mass. 583, 584, 585; *Lincoln* v. *Boston*, 148 Mass. 578, 580 ; *Commonwealth* v. *Davis*, 162 Mass. 510. As the holder of the title, it is in a kind of trust relation to the people for whose use the property was provided.

The first question is, what are the uses to which the property may be put. Only two are specifically mentioned, one for a training field and the other for a cow pasture. The inhabitants are to use it in common. The nature of each use is such as to require that it be accessible to all as a common to be enjoyed by the public. This dedication was very soon after the arrival of the first colonists in this part of New England. Town organizations were inchoate, and town boundaries were not well defined nor much regarded. In looking forward to the uses of the Common as a training field, the donors must have anticipated, that, in its future use, persons would be present as spectators or as participants in the movements, who were not inhabitants of Boston. The words chosen to designate the use, indicate an intention that the place should be kept for occupation by the public as a common, in ways of which the two specified are only typical. As years have gone by, there is no longer any occasion for common occupation of this land as a cow pasture, and in the sense in which the word " training field " was then used, this is almost equally true of this other kind of use. The proper execution of the public trust requires that the property be still kept open as a common for occupation by all the people, in ways that are kindred to those in which a common would ordinarily be used under such a dedication in the early years of the colony. In general, it seems to have been the purpose and the endeavor of the public authorities, for almost three centuries, to preserve the Common for uses, as nearly as possible, under changing conditions, like those indicated by the original dedication. Not only have grass and trees been cultivated and spaces set apart for games and for the evolutions of soldiers, but walks have been laid out, monuments erected, fountains set up and other provisions made for the comfort and

pleasure of the public in their use of the place. Some other uses a little more remote from those originally named, which it was thought would not materially interfere with the execution of the general purpose of the donors, have been permitted. Under the changed conditions in recent years, it was held by this court that the construction of a subway through the Common was not inconsistent with the purposes of the original dedication, and that it could be authorized by the Legislature. acting as the representative of the public interest. *Prince v. Crocker*, 166 Mass. 347. This was virtually a decision that such a use was not a violation of the *quasi* trust under which the legal title is held. It does not disregard the doctrine relied on by the plaintiffs, that, where property is dedicated by donors to a public use for a particular purpose, it cannot, at least without the exercise of the paramount right of eminent domain, be appropriated to a use of a different character, in disregard of the trust under which it is held and in violation of the rights of the donors and their legal representatives. *Cary Library v. Bliss*, 151 Mass. 364, 375, 376. *Howe v. Lowell*, 171 Mass. 575. *Louisville & Nashville Railroad v. Cincinnati*, 76 Ohio St. 481, 504, 506. *St. Paul v. Chicago, Milwaukee & St. Paul Railroad*, 63 Minn. 330, 352. *Jacksonville v. Jacksonville Railroad*, 67 Ill. 540, 543, 544. *Riverside v. MacLain*, 210 Ill. 308. In accordance with this doctrine, as stated and illustrated in these and other cases, the Common cannot be cut up into building lots and used for the erection of shops, and it may be doubtful whether it could be taken under an act of the Legislature and a vote of the city government of Boston, or of the citizens of Boston, and used by a railroad corporation for a freight yard. The rule that property taken for a public use may afterwards be taken for an entirely different public use that makes a continuance of the first use impossible applies especially to cases where the original taking is under a statute, and rests upon governmental authority. *Boston v. Brookline*, 156 Mass. 172, and cases there cited. *Old Colony Railroad v. Framingham Water Co.* 153 Mass. 561, 563. *Prince v. Crocker*, 166 Mass. 347, 362. As against the donors and the interests which they undertook to serve, it is plain that, except in the exercise of the right of eminent domain, the Common could not be appropri-

ated to a public use entirely inconsistent with the general character of the use originally intended. Whether it could be taken in the exercise of this right it is unnecessary in this case to decide, as the statute does not purport to take property in the Common under the right of eminent domain. It contains no provision for compensation. It is possible that there has been such an acceptance of the dedication of the original donors by the town and city of Boston and by the Legislature under different statutes, and such a creation of a public trust in this particular as to deprive the public authorities of the right, that otherwise they would have, to devote the property to a public use of an entirely different kind. If we assume this as a possibility in favor of the plaintiffs, we are still of opinion that the proposed use is permissible. It is not proposed to interfere much with the surface of the Common. The only change authorized by the commissioners is a slight enlargement of the approaches to the station underground near Park Street. So far as appears, the occupation above the surface, for all proper purposes, will be changed hardly perceptibly, if at all. The increase of facilities for approaching the Common will be a convenience to the public in the use and enjoyment of it. In *Wellington, petitioner,* 16 Pick. 87, which deals with the original dedication of the Common in Cambridge to use as a training field, it was held that the laying out of a public highway through a common similar to Boston Common was not inconsistent with the condition of the grant from the proprietors to the town. See also *United States* v. *Illinois Central Railroad,* 2 Bliss, 174, 179. Upon this point we think the decision in *Prince* v. *Crocker, ubi supra,* is also conclusive, notwithstanding the reference in the opinion to the vote of the inhabitants of Boston, accepting the act of the Legislature. If the use for a subway were inconsistent with the use for which the property is held under the original donation, and if the use could not be changed by the public authorities so as to be materially different from that originally contemplated, the action of the legal voters of Boston could not deprive the citizens of Boston or the general public of their rights under the original dedication. The ground on which the decision stands is that the new use is not at variance with the general purpose of the donors, and that

accordingly it was within the power of the authorities, representing the public as beneficiaries under the trust, to provide for this additional use of the property.

It having been decided that the construction of the subway was lawful by reason of the statute and the action of the voters of Boston, is it any less so under the present statute, without action of the voters ? The relations of the city of Boston to the act are only in its municipal capacity. In different decisions the city has been treated as holding the legal title ; but it holds it only as it is an agency of government representing the interests of the public. It has no rights of a private owner, apart from its holding as a representative of the government. As an agency of the government representing the people, it is subject to the control of the Legislature, which may abolish it and establish another agency in its place, or may deprive it of its power to represent the public, or may transfer a part or all of its governmental authority to another creation. *Boston Electric Light Co.* v. *Boston Terminal Co.* 184 Mass. 566, 570. *Mount Hope Cemetery* v. *Boston*, 158 Mass. 509, 511, 520. As was said in the opinion in *Steele* v. *Boston*, 128 Mass. 583, " the city holds the Common for the public benefit, and not for its emolument, or as a source of revenue, and has constructed and kept in repair these paths as a part of the Common for the comfort and recreation of the public, and not as a part of its system of highways or streets." In *Commonwealth* v. *Davis*, 162 Mass. 510, Mr. Justice Holmes said in the opinion : " There is no evidence before us to show that the power of the Legislature over the Common is less than its power over any other park dedicated to the use of the public, or over public streets the legal title to which is in a city or town. *Lincoln* v. *Boston*, 148 Mass. 578, 580. As representative of the public, it may and does exercise control over the use which the public may make of such places, and it may, and does, delegate more or less of such control to the city or town immediately concerned." In *Lincoln* v. *Boston*, 148 Mass. 578, the court said : " The city is alleged to own the Common. But it appears by statutes and decisions, of which we are bound to take notice, that its rights, even at common law, hardly extend beyond a technical title, without the usual incidents of title, and it is equally apparent that the license which it gave was not

given by it as an act of ownership, but as an act of municipal government. . . . The use of it is dedicated to and belongs to the public . . . and the Legislature has regulated the use very strictly. The city cannot let or sell the Common. St. 1854, c. 448, § 39. It cannot build upon it except within the narrowest limits. Pub. Sts. c. 54, § 16; c. 27, § 50. See St. 1859, c. 210, § 3. It cannot lay out ways over it. Pub. Sts. c. 54, § 13." See also *Clark* v. *Waltham*, 128 Mass. 567. We are of opinion that the title of the city is held only in its municipal capacity as an agency of the government for the benefit of the public, and that the power of the Legislature to represent this interest is supreme. It follows that the statute is a sufficient authority for the construction of the tunnel, without a vote of the city government or of the citizens of Boston.

The plaintiffs contend that the language of the twenty-third section of the act requires the submission of the question whether the tunnel shall be constructed to the voters of Boston. A part of this section is as follows: "If the tunnel hereinabove described is constructed, it shall, except as otherwise expressly provided herein, be constructed and paid for upon and under the same terms, conditions and provisions, so far as the same are applicable, and with the same rights, powers and privileges in respect of the construction thereof, which rights, powers and privileges are hereby conferred for such purpose upon the commission, the board, the city of Boston and its treasurer, the company, and other public officers or parties in interest respectively, including any persons sustaining damages by the taking of or injury to property by the commission under authority hereof, as are prescribed by chapter five hundred and thirty-four of the acts of the year nineteen hundred and two* for construction of the tunnel therein provided for; including the rights and powers conferred by section thirteen of said act, which section shall also

---

* St. 1902, c. 534, here referred to, contained in § 19 the following provision: "If the contract for the use of the tunnel and subway is executed by the commission and the company as hereinbefore provided, this act shall be submitted for acceptance to the voters of the city at the next municipal election, and if accepted by a majority of those voting thereon at such election it shall thereupon take full effect." Section 13, referred to, is not material.

apply to the location of the tunnel and to the construction of the subway referred to in this section if that is constructed." We are of opinion that this language does not relate to the question whether the tunnel shall be constructed, but only to the question how it shall be constructed after it is determined that it shall be built. Other provisions are inconsistent with the interpretation contended for by the plaintiff. Among other things it is provided that, if the Elevated Railway Company is dissatisfied with the decision of the Transit Commission, it may apply to the Board of Railroad Commissioners, who may "consider and finally determine the question." This contention of the plaintiffs is not sustained.

They also say that the determination of the Transit Commission is invalid because only a majority of the board considered and decided the question. The Transit Commission is an administrative board of public officers. In this business its members were not acting judicially but as representatives of the public in the administration of the law. Such a board may act by a majority of its members, if all have had notice and an opportunity to act, and the determination of a majority of a quorum under such circumstances is binding. *Damon* v. *Granby*, 2 Pick. 345, 355. *Plymouth* v. *County Commissioners*, 16 Gray, 341. *Mayor & Aldermen of Worcester* v. *Railroad Commissioners*, 113 Mass. 161. *Boston* v. *Doyle*, 184 Mass. 373, 385. *St. Joseph Township* v. *Rogers*, 16 Wall. 644.

Objection is made to the action of the commission on the ground that the statute involves an unconstitutional delegation of legislative authority.* But the Legislature determined that a railway for the same general service might be constructed by

---

* The provision referred to is contained in § 23 of St. 1906, c. 520, and is as follows: " Within six months after its acceptance of this act the [Boston Elevated Railway] company shall request the commission to construct such subway or such tunnel, and the commission shall thereupon determine which of such structures shall be constructed, and shall give the company written notice of such determination; and if the company is dissatisfied therewith, it may within thirty days after such notice apply to the board [of railroad commissioners] for a revision thereof, and thereupon the board may consider and finally determine the question; and the commission shall proceed, as soon as may be, with the work of construction."

either of two routes to either of two termini, and left to this commission the question of administration as to which of the two modes of building this great public work would be the better. This was a delegation only of such powers as often have been left to boards of public officers with the approval of this and other courts. *Brodbine* v. *Revere*, 182 Mass. 598. *Lynn* v. *County Commissioners*, 148 Mass. 148. *Martin* v. *Witherspoon*, 135 Mass. 175. *Opinion of the Justices*, 138 Mass. 601. *Welch* v. *Swasey*, 193 Mass. 364, 375. *Field* v. *Clark*, 143 U. S. 649. *Kollock, petitioner*, 165 U. S. 526. *Agawam* v. *Hampden County*, 130 Mass. 218. *Flood* v. *Leahy*, 183 Mass. 232, 236. *Commonwealth* v. *Union Passenger Railroad*, 163 Penn. St. 22; *People* v. *Dunn*, 80 Cal. 211.

*Bill dismissed.*

The case was submitted on briefs.

*J. D. Bryant, W. D. Turner & J. D. Colt*, for the plaintiffs.

*T. M. Babson*, for the Boston Transit Commission and the city of Boston.

*T. Hunt*, for the Boston Elevated Railway Company.

*J. F. Cronan*, for the defendant McGovern.