Common Pleas Court of Hamilton County.

ANNA MILLER v. THE CINCINNATI WHOLESALE GROCERY COMPANY and MINNIE FREY.

Decided October 16, 1931.

*A. A. Rendigs, Jr., Gatch, McLaughlin & Gatch,* for the motion.

*Froome Morris,* and *M. F. Barbour,* for the Cincinnati Wholesale Grocery Company.

*Merland, O'Meara, Santen & Willging,* for the plaintiff.

*John D. Ellis,* city solicitor, *Jacob Hauptman,* assistant city solicitor, *amicus curiae.*

DARBY, J.

The amended petition in this case alleged negligence on the part of both defendants, resulting in injury to the plaintiff. The defendant Minnie Frey filed her answer in the form of a general denial. The amended answer of The Cincinnati Wholesale Grocery Company, herein designated as "the Company" was filed and set forth the ordinances of Cincinnati following:

Section 74-101, entitled *"City Manager's Powers"* provides:

"The City Manager is hereby authorized to adopt and install such traffic control devices, signs and safety platforms for the controlling, regulating, directing and moving of traffic and for designating any shopping zone, safety zone, berthing zone, parking space, taxicab stand, bus stop and any other place or stand upon the streets of the city of Cincinnati as the safety or welfare of the public may require."

"Section 74-104. *Disobeying Markers, etc.* It shall be unlawful to drive or operate a vehicle in violation of the instructions or notices contained on any authorized sign, marker or other device."

"Section 74-106. *Disregarding, Removing, Damaging.* It shall be unlawful for any person to disregard, remove or damage any authorized traffic control device or sign, or any part thereof."

Then follows the allegation that Minnie Frey, in violation of the notices on the signs, etc., negligently and carelessly failed to stop her automobile, but drove the same at a high rate of speed into Sycamore Street, and struck the truck of the defendant The Cincinnati Wholesale Grocery Company. Further allegations are that she failed to grant the right of way to the defendant's truck, in disregard of the instructions to stop upon said signs.

A motion was made to strike out all of the allegations above set forth, and same was submitted to the Court upon briefs of the parties and also brief of the City of Cincinnati coming into court as *amicus curiae*.

The gravity and importance of the question involved in this motion is such as that extended investigation has been made, and numerous authorities will be cited.

There are two phases to the question, involving the validity of the acts of the City Manager in adopting and installing traffic control devices, signs, etc.

In this case the question is raised as a matter of civil law involving the duties of those operating cars upon the street, as they are related to actions for negligence, but it must be kept in mind that if these acts of the City Manager are not warranted by law, and if the ordinance is unconstitutional, the criminal aspect of the matter will likewise fall, and chaos be the result.

The principal claim made on behalf of the defendant Minnie Frey is that the ordinance conferring upon the City Manager authority to adopt and install such traffic control devices, signs, etc. is unconstitutional in that it is an attempted delegation to the City Manager of legislative authority. There is no claim that the local authorities have not power to establish traffic control devices, signs, etc., so that the question is as to the right of Council to confer authority upon the City Manager as set forth in the ordinance.

It must be kept in mind throughout this discussion that a valid ordinance of the city, Sec. 74-104 makes it an offense "to drive or operate a vehicle in violation of the instructions or notices contained on any authorized sign, marker or other device," and also that by Sec. 74-106, it

is made unlawful "for any person to disregard * * * any authorized traffic control device or sign, or any part thereof."

General Code, Sec. 6310-32 provides that—

"Local authorities shall have the right to designate by ordinance or resolution, additional main thoroughfares, and to designate what vehicles shall have the right of way at intersections of main thoroughfares, provided however, that legible and appropriate signs be erected not nearer than one hundred (100) feet from the intersection along all roads and highways intersecting such main thoroughfares."

This section recognized the authority in the municipality, among other things to designate main thoroughfares and to establish signs.

Sec. 6310-35 of the General Code contains very pertinent provisions relative to this discussion. As amended 112 O. L., 430, 433 that section provides as follows:

"Pedestrians and drivers of vehicles shall obey and abide by all signals, signs, whistles and directions of police officers and shall obey all automatic traffic signals."

Minnie Frey relies upon two Ohio cases among others, to support her motion and argument that the authority conferred upon the City Manager is unconstitutional, and therefore the ordinance is invalid.

*City of Cincinnati* v. *Cook,* 107 O. S., 233, involves the question as to the validity of an ordinance making it unlawful for the driver of a vehicle to permit the same to stand in front of a railway passenger station between designated points, "unless the permission to stand has been granted by the person having the supervision over such passenger station." The court held:

"Such ordinance is invalid because of the attempted delegation of legislative power, and for the reason that it is violative of the equal protection of the law guarantees of the state and federal constitutions."

That case is readily distinguishable from the ordinance involved herein, in that the violation of the ordinance depended upon the whim of an individual, inviting discrim-

ination and oppression. That ordinance is very different from a general ordinance conferring upon an administrative branch of the Government authority to make rules or regulations for the enforcement or carrying out of the general ordinances of the city. In the judgment of this court therefore, that case must be limited in its effect to the particular facts, and does not control in a situation such as presented here.

In the case of *Albrecht Grocery Company* v. *Overfield*, 32 O. A. R., 512, the question presented dealt with General Code, Section 6310-32 pertaining to the establishment of additional main thoroughfares, and marking them, and the court lays it down in that case that—

"In the absence of a municipal ordinance or resolution establishing main thoroughfares in addition to those created by law, and designating what vehicles shall have the right of way at intersections, the police department of a city does not have the power to make such designations and its attempt to do so by the placing of legible and appropriate signs at such intersections does not have any legal effect, and does not deprive the driver of a motor vehicle of the rights at such intersections given him by the general laws of the state."

In the discussion of the case the court calls attention to an ordinance of the city of Akron, requiring drivers to stop upon signals from a police officer, but no reference is made in that case to Sec. 6310-35 above referred to, which makes it the duty of the driver to stop at such signals and requires operators to observe automatic signals, etc.

The situation in the instant case is so different from that involved in the Albrecht case that it does not seem to be controlling of the question involved here, and while the court uses some rather decisive language as to the power of officers of the police department, and the effect of the signs referred to, yet for reasons hereafter to be stated, this court is of the opinion that that case does not control the question presented in this case.

Two cases are called to the court's attention however, which seem to deal more or less directly with the question involved.

In *Cavanaugh* v. *Gerk, Chief of Police* (Supreme Court of Missouri), 280 S. W., 51, the syllabus is as follows:

"1. As police regulation, city by ordinance can define and regulate parking places, establish automatic signals and one way streets.

"2. Legislative body cannot delegate its authority, but itself must exercise its legislative function, though it may empower certain officers, boards and commissions to carry out in detail its purposes, and promulgate. rules by which to put in force legislative regulations. ·

"3. City ordinance creating Traffic Council and authorizing it to establish regulations and determine streets to be affected held an unauthorized delegation of legislative authority, and regulations adopted by Traffic Council without effect of law until embodied in ordinance by council as contemplated by another section of ordinance."

It will be observed that there the Traffic Council was authorizezd practically to write the law controlling traffic upon the streets of St. Louis. Enumeration of its powers in Ordinance No. 32926 gives that Council authority to make rules prohibiting certain acts, excluding certain acts, establishing one way streets and doing other things which would make that Council practically the law making body as to the regulation of traffic, but the ordinance also contains the provision that such regulations must be enacted into an ordinance by the Council.

*City of Shreveport* v. *Herndon,* 159 La., 113 (105 So., 244), the syllabus is as follows: .

"1. A statute or ordinance that purports to vest arbitrary discretion in a public officer without prescribing a definite rule for his guidance, is unconstitutional.

"2. Situations require vesting of discretion in officer charged with duty of enforcing ordinance, as where it is impracticable to lay. down a definite rule, the discretion relates to enforcement of police regulation requiring prompt exercise of judgment.

"3. Ordinance No. 210 of 1923 of City of Shreveport, acting under commission form of government provided by Act No. 302 of 1910, giving Commissioner of Public Safety power to adopt and enforce rules prohibiting parking of vehicles, etc., within areas, and for time limited to be designated by him within his discretion held unconstitutional as vesting arbitrary discretion in him relative to legisla-

tive duty of enacting traffic ordinances, a duty which commission council itself should perform."

If the decision in that case is intended to lay down the principle that where the city has adopted an ordinance forbidding violation of certain traffic control signals, and has merely placed upon the administrative officer the duty of establishing those signals, and that such authority granted to the administrative officer is a grant of legislative authority, that decision is contrary to the general law upon the subject, including many federal decisions and the decision of the Supreme Court of Ohio in *Ex parte Company*, 106 O. S., 50. A dissenting opinion in the case of two of the judges of the court, states the case very clearly, and in conformity with the general law on this subject in the country as follows:

"It is certainly a legislative function to provide for the keeping of public streets free from congestion, and for facilitating the extinguishment of conflagrations, or beautifying public places, and to pronounce penalties against those who obstruct the legislative purpose; but the arrangement of location and details is a mere administrative function, just as it is a legislative function to provide for the regulation of congested traffic; but surely to the traffic officer may be left some discretion directing the movement and location of vehicles, without specifying in the ordinance the number of minutes to be allowed for traffic going in this way and in that, and the precise spots in which they shall stop, stand, etc. Traffic regulation is becoming a matter of *supreme importance* in this age; and details need constant changing to keep up with the rapid growth of traffic. If these *details* must be written into the law, any attempt to regulate traffic may be given over at the start; for in the time it takes to pass an ordinance, conditions may have already so changed as to make the ordinance no longer practicable; and what was best yesterday may be all wrong today, and good again tomorrow."

In 12 C. J., under "Constitutional Law" dealing with the legislative powers and delegation thereof, there is found a discussion of the principle involved in this case, which is very comprehensive and very clear, and states the difference between the granting of legislative authority

and conferring administrative authority very precisely. In Sec. 323 (p. 840) appears the following:

"While, however, the legislature may not delegate the exercise of its discretion as to what the law shall be, it may confer discretion in the administration of the law. Also, the legislature has power, while enacting a statute creating a new right with its remedy, to vest in some board or person power to adjudicate all matters arising under the statute, and to make such adjudication final and conclusive. The difficulty lies not in determining the governing principle, but in its application to concrete cases. With the growing complexity of modern life, the multiplication of the subjects of governmental regulation, and the increased difficulty of administering the laws, there is a constantly growing tendency towards the delegation of greater powers by the legislature, and towards the approval of the practice by the courts; but this variety of conditions and circumstances and of laws intended to meet them has led to a variety of judicial decisions and utterances which the courts have found difficult to harmonize."

In the same article, and under Sec. 329 (p. 845) is a discussion of the right of the legislature to confer authority on the administrative bodies to enforce the law, and there are set forth a multiple of cases and instances in which the legislature has conferred upon administrative officers the right to make and enforce rules dealing with their respective departments. A few of the outstanding cases will be referred to as sustaining the authority of the council to confer this matter of administration upon the City Manager. Of course, under any such grant of authority, the administrative officer is limited to the matter of administration of the law, as in this case the mere installation of the traffic control devices, and he would not be authorized to provide penalties or declare acts to be unlawful as was done in both the Missouri and Louisianna cases referred to.

This is not a new question in Ohio, and the principle contended for in this opinion has been laid down by the Supreme Court in at least two cases.

In *State* v. *Messenger*, 63 O. S., 398, the court in its opinion lays down the principle that the legislature may

confer upon the county commissioners authority to prescribe certain rules as to the use of the roads. On page 401 it is said:

"It will thus be observed that the commissioners do not prohibit any one from transporting a greater weight than is fixed by them in any case, nor do they fix a penalty for so doing. This is done by the statute. It is the statute that prohibits the transporting of a greater weight than is fixed by them, and it is the statute that imposes the penalty on any one for so doing. The commissioners, in the exercise of an administrative function, conferred on them by the legislature, simply determine the increased weight that may be transported in vehicles having a tire of three inches or upwards. When this has been done by them, the law prohibits the carrying of burdens in excess of the weight so fixed, and adds a penalty for its violation. The regulations of the commissioners, without the provisions of the law would be of no effect whatever. Nothing in law would be prohibited, and no penalty would be incurred by any one in disregarding the regulations of the commissioners. It seems then clear that the commissioners of the county, in acting under this statute do not act in a legislative capacity."

The syllabus of that case contains the following:

"3. Section 4904 Revised Statutes, giving to county commissioners the power to prescribe the increased weight over two thousand pounds that may be carried in vehicles having a width of tire three inches or upwards over certain improved roads in their counties, is not unconstitutional."

In *Ex parte Company,* 106 O. S., 50, the court had before it the act of the legislature conferring upon the public health council of the State Department of Health authority to designate diseases, and to make regulations relative to the control of persons having certain contagious diseases. It was held:

"1. The designation of the diseases named in Class B of regulation No. 2, and regulations Nos. 18, No. 23 and No. 24 of the Ohio Sanitary Code in relation thereto, adopted by the Public Health Council of the State Department of Health, effective July 1, 1920, was a lawful exercise of the police power of the state.
"2. Such regulations, and the quarantine therein pro-

vided for, are not in conflict with, nor do they violate any provision of either the federal or state constitution."

The discussion of the case by Judge Clark includes many of the federal cases, and comes back to the principle laid down in *State* v. *Messenger, supra,* that there is no constitutional inhibition against legislative authority conferring the right to make rules and regulations for the administration of established law, and that case expressly supports the power in the legislature to confer authority to make rules and regulations, even to the extent of quarantine, which means imprisonment of the person. On p. 57 of the opinion of the court is the following:

"The distinction between power granted to legislate and power granted to administer, marks the difference between the contention urged and the true question here to be considered. It is not now necessary to consider the question of delegated legislative power. It is sufficient that the power of the legislature to authorize administrative authority on the part of boards of health and subdivisions of the state, and to authorize the adoption by such instruments of its choice, of rules and regulations affecting public health, including the power to detain and quarantine has been considered and upheld in *People* v. *Tate,* 261 Ill., 197; *State* v. *Normand,* 76 N. H., 541; *Highland* v. *Schulte,* 123 Mich., 360; *City of Taunton* v. *Taylor,* 116 Mass., 254; *Isenhour* v. *State,* 157 Ind., 517; *Blue* v. *Beach,* 155 Ind., 121; *Hengehold* v. *City of Covington,* 108 Ky., 752."

In the last mentioned case the court expressly refused to follow what is known as the *Burdge* case, 95 Wis., 390, holding that the conferring of such regulatory powers is unconstitutional.

In *Ottawa* v. *Bodley,* 67 Kan., 178, there was under consideration the validity of a city ordinance providing that the city marshal should designate the positions to be occupied by hacks and vehicles at railway stations. Bodley was prosecuted for ignoring the order and placing his vehicle at another location. In the decision the court say:

"Ottawa is a city of the second class, and full authority is given to cities of that class to regulate depots and depot grounds (Gen. Stat. 1901, Sec. 1005). A regulation of

hackmen and others who solicit passengers at railway stations is in the interest of peace and good order, and obviously essential to the convenience and comfort of travellers. ʾThe placing of them under the direction and control of the city marshal is a reasonable and practical method of regulation. The power to designate the position for hackmen and solicitors of passengers must be placed in some one, and no reason is seen why it may not be properly given to the marshal, a peace officer whose duty it is to preserve order throughout the city. We think there was power to regulate hackmen, and that it has been exercised in a reasonable and valid way."

*Veneman* v. *Jones*, 118 Ind., 41, involved the power of the council to "enact an ordinance authorizing police officers to prescribe the places where omnibuses, hacks and other vehicles shall stand at a railway depot, and requiring drivers to obey the directions of such officers in regard to the places which said respective vehicles shall occupy," and the power so to do was affirmed. On p. 433 of the opinion the court say:

"There can be no question but that the ordinance authorizing the depot marshal to prescribe the places where omnibuses, hacks and other vehicles should stand at the railroad depot, and requiring drivers to obey the directions of police officers in regard to the places which their respective vehicles should occupy, was a proper regulation and one which the municipal authorities had the power to pass." (Cases cited.)

The legislature had the authority to enact Sec. 6310-35, requiring the observance of police signals and directions, and requiring the observance of automatic signals, so that there could be nothing inconsistent with the passing of similar laws by the city as was done in the instant case.

An almost endless citation of authorities could be made bearing upon the distinction between the power to legislate and the power to administer established law. A few authorities are referred to as showing the wide extension of cases in which this distinction is recognized, and in which the legislature has authority to confer power to administer the law as established.

In *United States* v. *Ormsbee,* 74 Fed. Rep., 207, there was a prosecution by indictment for knowingly and wilfully violating the rules prescribed by the Secretary of War of the United States, for the use of canals and similar works of navigation operated by the United States, said rules and regulations having been passed under the authority of an Act of Congress making it the duty of the Secretary of War to prescribe such rules and regulations, and providing that any one who shall violate such rules, shall be guilty of a misdemeanor. In overruling a motion to quash the indictment the District Court held:

"The grant by Congress by the Act of August 17, 1894, to the Secretary of War, of authority to prescribe such rules and regulations for the use, administration and navigation of canals, etc., owned or operated by the United States, as in his judgment public necessity may require, was not invalid as a delegation of legislative power; and the rules made pursuant thereto have the force of law, so that persons violating the same by drawing off water from a canal, are subject to criminal prosecution under provisions of the same Act."

Attention is called to the fact that the Act providing for the authority to establish the rules, at the same time made their violation a misdemeanor, and fixed the penalty. The Secretary of War therefore was not enacting a law, but simply filling the details necessary to be done so that the law could be enforced.

*United States* v. *Grimaud,* 220 U. S., 506, was a prosecution by indictment for grazing sheep on the Sierra Forest Reserve without having obtained the permission required by the regulations adopted by the Secretary of State under authority of Congress. It was held that the authority to adopt regulations was not a grant of legislative power.

*Field* v. *Clark,* 143 U. S., 649, 694, holds that the legislature may delegate authority to pass rules and regulations of an administrative character.

See also, *Light* v. *United States,* 220 U. S., 523.

*Monongahela Bridge Co.* v. *United States,* 216 U. S., 177, was a prosecution by the United States against the

Bridge Company under the River and Harbor Act, Section 18 of which provides that the Secretary of War is authorized to declare what are obstructions to navigable rivers, and to direct removal of the same, and making a failure to comply with such directions an offense. The Supreme Court held that such power was not legislative but administrative, and not unconstitutional. See also *Chatfield Co.* v. *New Haven,* 110 Fed. Rep., 788.

*United States* v. *Penn. Co.,* 235 Fed., 961, was a prosecution for violating the Act relative to transporting in interstate commerce cattle hides in violation of the rules of the Department of Agriculture. It was held that the delegation of authority to make such rules was not a delegation of legislative authority, but of administrative authority, and was not unconstitutional.

*Martin* v. *Witherspoon,* 135 Mass., 175, involved the right of the legislature to empower the governor or council to regulate pilotage of vessels. It was held that the granting of such power was not legislative but administrative.

*Isenhour* v. *State,* 157 Ind., 517, was a prosecution for violation of the Pure Food Law. It was held that the law vesting in the State Board of Health authority to adopt measures to facilitate the enforcement of the law, is not a delegation of legislative authority.

The foregoing authorities are sufficient to show the trend of the judicial mind of the country relative to this subject. The city council has conferred upon it legislative authority. It has passed general laws providing for traffic regulations and for disobedience of certain automatic devices, and other established signs. Those ordinances establish general rules, in the absence of which nothing that could be done by the City Manager, even under authority of the ordinances referred to, would have any effect. What is present in this situation is the establishment of the law forbidding violation of established control devices and signs, and upon that the authority conferred on the City Manager to place those signs. As stated by one of the dissenting judges in the Louisiana case, if every time a sign is to be placed or changed the council would have to pass a separate act, there would be

an end of this regulation.

This court has clearly reached the opinion that the authority conferred upon the City Manager by Sec. 74-101 is administrative only, and in furtherance of the enforcement of Sec. 74-104 and 74-106.

It is interesting to note that the ordinances authorizes the City Manager—

"to adopt and install such traffic control devices, signs and safety platforms for the controlling, regulating, directing and moving of traffic, and for designating any shopping zone, safety zone, berthing zone, parking space, taxicab stand, bus stop or any other place or stand upon the streets of the city of Cincinnati, as the safety and welfare of the public may require."

All this has to do with the mere installing of devices, signs and platforms. It has nothing to do with any other subject than the mere adoption and installation of such instruments, and therefore, construing it in connection with Sec. 74-104, any authority of the City Manager under this section ceases with the adoption and installation of the devices and instrumentalities named.

The motion to strike from the petition those parts of the answer heretofore referred to is overruled.

The motion further seeks to strike from the petition the following language:

"on which defendant's truck in passing southward had the right of way."

The facts in the case should be stated, but not conclusions of law. The allegations immediately preceding the language objected to are that the street involved was much traveled, on which electric cars ran, and was a main thoroughfare as defined by the General Code of Ohio. No objection is made to that language, and it is proper to be in the petition, but the conclusion that the defendant's truck in passing southward had the right of way is improper, and should be stricken out. That may be done however, by cross marks, so as to thoroughly obliterate from the petition that language.

An entry may be drawn in conformity with the foregoing conclusions.