399 Mass. 507                                                507

Board of Selectmen of Braintree *v.* County Commissioners of Norfolk.

## Board of Selectmen of Braintree *vs*. County Commissioners of Norfolk & others.[1]

Norfolk.  December 5, 1986. — March 23, 1987.

Present: Hennessey, C.J., Wilkins, Abrams, Lynch, & O'Connor, JJ.

*Public Land. County,* Correctional facilities, Hospital, Real property, Commissioners.

A fully-argued appeal in a civil action which presented a question of public importance was considered on its merits even though a final judgment had not been entered in the Superior Court. [508]

A building on land which a county had taken by eminent domain for hospital purposes could not be appropriated by the county commissioners for use as a correctional facility in the absence of specific legislative authority for the change of use. [508-513]

Civil action commenced in the Superior Court Department on October 15, 1984.

The case was heard by *Katherine Liacos Izzo,* J., on a statement of agreed facts.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*William F. Carr* for the plaintiff.

*Paul R. Kelley (Terry Philip Segal* with him) for the defendants.

Lynch, J. The plaintiff, the board of selectmen of Braintree (board), brought an action in the Superior Court seeking to enjoin the defendants from using a building which is part of Norfolk County Hospital as a correctional facility. The case was heard on a statement of agreed facts. After taking a view and conducting a hearing on the plaintiff's complaint, the judge denied the plaintiff's request for an injunction. The plaintiff

---

[1] The trustees of Norfolk County Hospital and the sheriff of Norfolk County.

appealed to the Appeals Court and we took the case on our own motion. We reverse.

Initially, we address a procedural issue which bears on the timeliness of this appeal. The Massachusetts Rules of Civil Procedure require that a decision of the trial judge be contained in a judgment which shall be set forth in a separate document. Mass. R. Civ. P. 58 (a), as amended, 371 Mass. 908 (1977). The time within which an appeal may be taken is determined from the date that judgment is entered. Mass. R. A. P. 4 (a), as amended through 395 Mass. 1110 (1985). Under Mass. R. A. P. 18 (a), as amended, 392 Mass. 1106 (1984), a copy of the judgment must be contained in the record appendix filed with the appeal. In the present case, no judgment was ever entered. The plaintiff purports to appeal from "the memorandum and order" of the Superior Court judge. The judge's order finally disposed of the matter in that court since the relief sought in each of the plaintiff's counts was either denied or rendered moot. Furthermore, even where interlocutory appeals are improperly before the court, we may decide the question presented where it is of considerable public importance. See *Boston Hous. Auth.* v. *Labor Relations Comm'n,* 398 Mass. 715, 717 n.6 (1986); *Wellesley College* v. *Attorney Gen.,* 313 Mass. 722, 731 (1943). The present case is clearly one of significant public importance. Finally, to dismiss the appeal, requiring the plaintiff to return to the Superior Court, have a separate judgment entered in the case and then refile the appeal, would be contrary to the interest of judicial economy. The case has been fully briefed and argued and we will render our opinion in the matter.

We summarize the material facts. The county commissioners were defendants in an action in the Federal District Court challenging as unconstitutional the overcrowded conditions at the Norfolk County house of correction. On May 14, 1984, a Federal District Court judge ordered that the jail population be reduced from approximately 200 inmates to 143 inmates, effective July 1, 1984. The defendants were ordered to choose a suitable site for the "excess" prisoners. A consulting firm conducted a survey in which Norfolk County Hospital was noted as a physically suitable site but the site was not recom-

mended as a correctional facility because its use was governed by St. 1916, c. 286, entitled, "An Act to provide for the construction by counties of tuberculosis hospitals for cities and towns having less than fifty thousand inhabitants."[2] On September 19, 1984, the county commissioners voted to use the "nurses' quarters"[3] at Norfolk County Hospital as a temporary house of correction. On July 15, 1985, the sheriff took care, custody, and control of the "nurses' quarters" and began to house there inmates from the house of correction.

On November 13, 1985, a Superior Court judge ruled that the use of the nurses' quarters to house minimum security prisoners would "not affect the continued use of the property as a chronic disease hospital." She further ruled that this use was "merely incidental to the primary use of the land taken and is not 'entirely inconsistent with the general character' of the facility." She concluded that the present use as a correctional facility was not illegal and did "no violence to the specific public purpose for which the premises were taken by eminent domain on December 18, 1917, by the County Commissioners of Norfolk."

The plaintiff claims error in the lower court's denial of injunctive relief. The board contends that the use of the nurses' quarters as a correctional facility is contrary to the use for which the property was taken and is, therefore, improper without specific legislative approval. The defendants claim that the challenged use does not affect or interfere with the operation

---

[2] Statute 1916, c. 286, § 1, provides in pertinent part: "The county commissioners of each county in the commonwealth, except Suffolk, Nantucket and Dukes County, are hereby authorized and directed to provide adequate hospital care for all those persons residing in cities or towns having less than fifty thousand population . . . who are in need of such hospital care and for whom adequate hospital provision does not already exist."

Section 10 provides: "For the purpose of carrying out the provisions of this act county commissioners may purchase or lease, or take by right of eminent domain, such land, not exceeding five hundred acres in extent, as they may deem necessary or convenient."

[3] The "nurses' quarters" is a two-story building which is separated from the hospital by a hospital roadway. It is approximately 100 yards from the main hospital building and approximately 110 yards from Washington Street in Braintree.

of the hospital but is merely incidental to that primary use and, thus, prior legislative authority is not needed.

Statute 1916, c. 286, authorized the county commissioners to provide adequate hospital care for all those in the county suffering from consumption and who were in need of such care. Section 10 authorized the commissioners to take land by eminent domain under certain conditions, "[f]or the purpose of carrying out the provisions of this act . . . ." Land so taken "shall vest in the county, to be held for said hospital district." The land on which Norfolk County Hospital is situated was taken by eminent domain under the authority of the 1916 special act, and the taking was recorded at the Norfolk County registry of deeds on December 18, 1917. The instrument recited that the land was so taken "for the benefit of said County of Norfolk for Hospital purposes as set forth in said Acts and for the inhabitants of said County and Hospital District, in manner prescribed in and by said Acts and for all purposes therein provided." The land taken for Norfolk County Hospital in December, 1917, was continuously used for hospital purposes except that a portion was deeded out for conservation purposes in 1978.[4] The nurses' quarters was used for hospital purposes since its construction approximately fifty years ago until July 15, 1985.

Land which has been devoted to one public use cannot be diverted to another, inconsistent public use without plain and explicit legislative authority. *Robbins* v. *Department of Pub. Works,* 355 Mass. 328, 330 (1969). *Bauer* v. *Mitchell,* 247 Mass. 522, 528 (1924). *Higginson* v. *Treasurer & School House Comm'rs of Boston,* 212 Mass. 583, 591 (1912), and cases cited.

---

[4] On April 26, 1978, the commissioners granted to Norfolk county approximately fifty-three acres of the 98.04 acres taken by eminent domain for the county hospital. The land was transferred pursuant to G. L. c. 34, § 25, which authorizes the commissioners to acquire land by eminent domain for conservation purposes, and G. L. c. 40, § 8C, which provides for establishment of municipal conservation commissions which can acquire land for conservation in the name of the municipality. We offer no opinion on the validity of the commissioners' action in that situation and it has no bearing on the present case.

Here, the commissioners are attempting to appropriate a portion of the hospital grounds to a different public use which is inconsistent with the hospital use. The nurses' quarters is within the area of the original taking and was used for hospital purposes prior to July 15, 1985. The use of that building as a correctional facility is not consistent with use of the building for hospital purposes, and the judge's ruling that the action of the commissioners involved a use "incidental" to the hospital does not make it otherwise.

The cases relied on by the defendants, *Peirce* v. *Boston & Lowell R.R.,* 141 Mass. 481 (1886), and *Codman* v. *Crocker,* 203 Mass. 146 (1909), are clearly distinguishable from the present case and do not support the defendants' position. The court held in *Peirce* v. *Boston & Lowell R.R., supra,* that the use of a railroad building as a lodging house was "consistent with its occupation for the purposes for which it was taken." [5] *Id.* at 488. The court reasoned that providing food, lodging, and horse-keeping and horse-hiring for the convenience of its passengers and others[6] was "incident" to the business of the railroad because the existence of such services could serve to increase its business as a carrier. *Id.* Thus, the decision does not involve a subsequent, inconsistent use, and, therefore, no specific legislative authority was needed to authorize the station master's use of the premises as a lodging house. In the present case, the use of the nurses' quarters as a correctional facility has absolutely nothing to do with its "occupation for the purposes for which it was [originally] taken." *Id.* Thus, it is clearly an inconsistent use.

In *Codman* v. *Crocker, supra* at 150, the court held that construction of a tunnel under Boston Common, pursuant to legislative authority, was "not inconsistent with the purposes

---

[5] The land had been taken by eminent domain pursuant to St. 1874, c. 372, §§ 58, 60, for "depot and station purposes."

[6] The majority of the boarders were employees of the nearby prison while others were employees of the railroad; the lodging house was also available to travelers. *Peirce, supra* at 483. The fact that the lodging house was *available* to other than passengers did not foreclose a finding that the use of the premises was incidental to and consistent with the original purpose.

of the original dedication." [7] The *Codman* court assumed the land had been *donated* for a public purpose and its task was to determine whether the legislation was "at variance with the general purpose of the donors." *Id.* at 148, 151-152. The court noted that the public use of the common in 1909 was not identical with its original use but had been preserved "as nearly as possible." *Id.* at 149. The court stated that the land could not be appropriated for a use that would be different in character to its originally intended use. *Id.* at 150-151. It was the Legislature, the court believed, that had supreme power to dictate what is for the "benefit of the public." Thus, the legislation authorizing the tunnel construction was valid. *Id.* at 153. In the present case, the Superior Court judge analogized the changing uses of Boston Common to the changing use of Norfolk County Hospital. While the use of the hospital as a chronic disease hospital may be consistent with the original use as a tuberculosis hospital, use as a correctional facility is not. The fact that the hospital would continue to operate is not controlling. The use is entirely different and cannot be accomplished without legislative authority.

The defendants in the present case point to no legislative authority justifying their actions. General Laws c. 34, § 14 (1985 Supp.), grants to county commissioners general powers of supervision over county property. This is not enough, however, to validate the commissioners' imposing control for one public use over property which had been devoted to another, inconsistent public use. See *Bauer* v. *Mitchell,* 247 Mass. 522, 528 (1924). In *Bauer* v. *Mitchell, supra,* the land had been dedicated to use as a school under definite statutory provisions. The commissioners could not take part of that land for use of

---

[7] At the time of the *Codman* decision, it was believed that the Boston Common was donated in 1634, "for the common use of the inhabitants of Boston as a training field and cow pasture." *Codman* v. *Crocker, supra* at 148-149. Subsequently, in *Lowell* v. *Boston,* 322 Mass. 709, 725, 729 (1948), the court determined that the town (Boston) had actually bought and paid for the land and that title had vested in fee simple free from any trust. The court further noted, however, that the title was not free from *any* restriction since the town had dedicated the land for the use of the public as a public park. *Id.* at 729-730 & n.1.

sewer drainage for a tuberculosis hospital, absent specific legislative authority. *Id.* Similarly, in the present case, the defendants cannot take part of the land used as a hospital for use as a correctional facility, absent specific legislative authority.

The order of the judge in the Superior Court denying the plaintiff's injunction is reversed and the case remanded for the entry of judgment enjoining the use of the nurses' quarters as a correctional facility, effective at such reasonable time after rescript as will permit the orderly transfer of the prisoners to other facilities.

*So ordered.*